CARPENTER *v.* STATE.

4272                                    164 S. W. 2d 993

Opinion delivered October 5, 1942.

*J. R. Long,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HOLT, J. A jury convicted appellant, Arthur Carpenter, of the crime of arson and fixed his punishment at one year in the state penitentiary. The indictment charged that appellant on January 1, 1942, set fire to and burned a building belonging to the Washington county, Mississippi, Y. M. C. A. On this appeal appellant contends that the evidence was not sufficient to support the verdict and the judgment against him, and that the trial court erred in giving appellee's instruction No. 4.

1.

In cases of this nature this court has many times announced the rule that the duty devolves upon the state to prove the *corpus delicti*. The state must also not only show that a building was burned, but that such burning was the result of the willful act of some person responsible for his acts. See *Johnson* v. *State,* 198 Ark. 871, 131 S. W. 2d 934, and *Hancock* v. *State, ante,* p. 174, 161 S. W. 2d 198.

The rule is also well established that arson may be proved by circumstantial evidence. See *Duke* v. *State,* 183 Ark. 1153, 38 S. W. 2d 764.

On appeal the evidence must be viewed in the light most favorable to the appellee. See *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50, and *Tate* v. *State, ante,* p. 470, 163 S. W. 2d 150.

The secretary of the Y. M. C. A. described its property located near Malvern, Arkansas, and testified that the summer before the Y. M. C. A. building, in question, was burned they had cared for approximately 550 boys and girls in the camp, and that in a conversation with appellant, a near neighbor to the camp, appellant objected to the camp and its location. Sam Easley, a caretaker at the camp, testified that he discovered the fire at about 12:30 a. m., and that by the time he reached it the fire was beyond control. He sent his boy to call officers and request that blood hounds be sent to the scene. Bill Abbott came with two dogs and about 20 feet from the place where the building had burned they came upon and followed a trail. He further testified that he

saw a jug "partly burned right there where the fire was set." "Q. Do you know whether or not there were any jugs under the building? A. No, because I kept it cleaned out all the time. Q. How long had it been since anybody had used this building? A. Along the last of August. It was locked and nailed up." There had been a very hard rain preceding the fire.

Paul Easley, the caretaker's son, corroborated his testimony.

Bill Abbott, a Hot Springs policeman, testified that he brought two blood hounds to the scene; that they were bred at the Arkansas prison farm at Tucker, were well trained and he had never seen them fooled. When he reached the scene the building had completely burned, but the rain had stopped. He took the dogs to the back of the building and they "picked up a trail" which they followed to appellant's house. He further testified that the dogs could not have "picked up" a trail made the day before on account of the rain. On the trail they came to soft spots where they found rubber boot tracks that had been made since the rain. He put appellant's boots in the tracks and they fitted. They found the boots in appellant's house about two hours after the fire and after the dogs had led them to it. The boots were wet and appellant's trousers were wet to his waist. "We began looking around over the house for wet clothing and couldn't find them. He had on a dry pair of socks and the pants we got were soaking wet. We couldn't find any other wet clothes in the house. He still had them on. This was about 2 a. m. on the night of the fire." He further testified that they tried the dogs to see if they would trail anyone away from the gate leading to appellant's house, and they would not.

Will Lowe, a deputy sheriff, testified that he and Mr. Abbott managed the dogs and that they followed a trail up to appellant's house. He called on appellant to come out and in four or five minutes appellant appeared. Appellant had on his trousers and a pair of socks. The trousers were wet from the waist down, and the boots which were lying in a box near the wall were still moist.

Appellant said he had been in the house all evening, ever since he had finished his work. The trousers were so wet you could squeeze water out of them. He compared the boots with a track and they fitted. The track had been made after the rain which ceased about midnight. He found two glass jugs that had kerosene in them. Appellant said he had bought four gallons of kerosene from a country merchant within the last few days and two gallons from a peddler. Appellant told them he used the kerosene for his chickens. J. G. Fisher, sheriff of Hot Spring county, testified that appellant, when brought over to the jail, offered to plead guilty with the understanding that he was not guilty.

Jack McKenzie, state fire marshal, testified that in the northwest corner of the place where the building burned, near some steps, there was the neck of a glass jug; that he talked to appellant about the fuel that he used for his lanterns and lamp in his chicken house, and appellant told him he used possibly a gallon of coal oil a week and that he had a gallon or a gallon and a half on hand at the time of the fire. Appellant then said that he had purchased six gallons previous to the fire. He also saw Will Lowe fit appellant's boots in the tracks and they fitted perfectly. They checked up on the purchases of kerosene by appellant and found he had bought six gallons seven or eight days prior to the fire and that he had on hand a gallon to two gallons at the time of the fire. He talked to appellant and appellant said that he would like to get out of it and would enter a plea of guilty if he could get out real light, but wanted it understood in court he was not guilty.

It is our view that the evidence was ample to support the jury's verdict and the judgment of the court.

Appellant's objection to instruction No. 4, given on behalf of the state, can not be sustained for the reason that the transcript discloses that no objection was made to this instruction by appellant and no exceptions saved. It is not sufficient to bring forward an objection for the first time in the motion for new trial. In *Boatright* v. *State*, 195 Ark. 611, 113 S. W. 2d 107, we said: "The

transcript does not reflect that a motion to quash the indictment was filed by appellant or that any objection was made to overruling such a motion. It is true that in the motion for a new trial appellant states the trial court erred in overruling his motion to quash the indictment. However, the record does not show that such a motion was filed or that any objection was made to overruling same." See, also, *Butler* v. *State,* 198 Ark. 514, 129 S. W. 2d 226.

Finding no error, the judgment is affirmed.