YARBROUGH v. STATE.

4322                                          176 S. W. 2d 702

Opinion delivered January 10, 1944.

550

*Tom J. Terral,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

HOLT, J. March 16, 1943, appellant, Charles Yarbrough, a Negro, was charged with the crime of murder in the first degree, alleged to have been committed February 21, 1943, when he shot and killed Hosea Smith, another Negro. Upon a trial, he was found guilty of murder in the second degree, and the jury assessed his punishment at five years in the state penitentiary. From the judgment comes this appeal.

For reversal, appellant contends: (1) that "The evidence is insufficient to show that the gunshot wound caused the death of the deceased." (2) "There was no sufficient evidence of second degree murder." (3) "The court erred in failing to instruct the jury on the lesser degrees of homicide." (4) "The court erred in instructing the jury on the weight to be given the testimony of defendant and his wife."

Briefly stated, the material facts are: At about 11:30 p.m. on the night of February 21, 1943, appellant and the deceased, Hosea Smith, left North Little Rock to go to their respective homes north of that city. They were riding in Nathaniel Johnson's car with some other negroes. Appellant and the deceased quarreled over some whiskey. Before they had reached appellant's home, appellant got out of the car, got into another car of a friend, and went on home, where, over the protest of his wife, he procured a shotgun, went out to the road a short distance from his house, where the Johnson car, in which the deceased was riding, had stopped.

Nathaniel Johnson, an eyewitness for the state, testified that: (quoting from appellant's brief) "He stopped about 60 yards from Charlie's (appellant's) house, and saw appellant and his wife on the porch. He couldn't tell what they were doing. Appellant came to the car and told Hosea to get out, that he was going to kill him. He had a shotgun in his hand. Appellant had the gun on Hosea's breast and Hosea grabbed it with his left hand and pushed it away, and it was fired into his right arm." Hosea Smith died about a week later from the wound.

Lucy Hughes, another eyewitness, testified: "He (meaning appellant) came out with a gun and asked for Hosea, saying he was going to kill him. Hosea got out of the car, the gun fired and she left." The testimony of Johnson and Lucy Hughes was corroborated by Otilla "Temp" Hughes and Esther Smith.

Horace Chapman testified: (quoting from appellant's brief) "He was in the back or rumble seat with appellant and deceased. Appellant was 'pretty tight'. On the way out they argued about some whiskey. When they crossed the railroad, the car was stopped and they got out discussing the whiskey. Jerry Banks drove up and Charlie left with him. Charlie said he was going to kill Hosea. . . . When they got in front of Charlie's house he saw him and his wife scuffling over a shotgun. Appellant came to the car and asked Hosea out, and he got out. He (Hosea) didn't have anything in his hands. Charlie had a shotgun at Hosea's breast. Hosea hit it with his left hand and the gun fired. . . . Smith, the deceased, took the gun away from appellant after he was shot, and took it to his mother's. There was only one shot fired." The deceased was shot in the right arm and his death occurred about a week later. The coroner of Pulaski county, Dr. Howard Dishongh, testified that Hosea Smith "died as a result of a gas bacillus infection of a gunshot wound of the right arm, interior of the upper one-third of the middle one-third." There was other testimony of probative value, which we think it unnecessary to set out here. Appellant admitted that he shot the de-

ceased, but that he did so in the defense of his home and to protect his own life.

1 and 2. We have not attempted to detail all the testimony, but the above is, we think, substantial, and ample to support the jury's verdict. On appeal, according to our long established rule, it is our duty to weigh the evidence in its most favorable light to the appellee, and if substantial, to affirm the judgment. *Carpenter* v. *State,* 204 Ark. 752, 164 S. W. 2d 993, and *Slinkard* v. *State,* 193 Ark. 765, 103 S. W. 2d 50.

3 and 4. Appellant next argues that the court erred in failing to instruct the jury on the lesser degrees of homicide and in giving an instruction on the weight to be given the testimony of appellant and his wife. The answer to these contentions is, that appellant did not ask the court to instruct the jury on the lesser degrees of homicide, neither did he interpose any objection, or save any exceptions, to the action of the court in instructing the jury on the weight to be given the testimony of appellant and his wife. In fact, appellant made no objections to any of the instructions given by the court, and makes no reference to these alleged errors in his motion for a new trial. Before appellant can complain of these alleged errors, he must first properly preserve them at the trial and bring them forward in the bill of exceptions. This he failed to do. Appellant, in the instant case, has not been convicted of a capital offense. We are not permitted, therefore, to review alleged errors to which no exceptions have been saved.

In *Edwards* v. *State,* 110 Ark. 590, 163 S. W. 155, this court held: (Headnote 3) "In all cases except when there has been a conviction of a capital offense, the Supreme Court will not review alleged errors to which no exceptions have been saved."

In *McKinley* v. *Broom,* 94 Ark. 147, 126 S. W. 391, this court said: "On appeal from the circuit court, this court only reviews errors appearing in the record. The complaining party must first make an objection in the trial court, and this calls for a ruling on his objection. An exception must then be taken to an adverse ruling on

the objection, which 'directs attention to and fastens the objection for a review on appeal.' The matters complained of, together with the objections and the exceptions to the ruling of the court, must be brought into the record by a bill of exceptions; and the motion for a new trial can serve no other purpose than to assign the ruling or action of the court as error. *Werner* v. *State*, 44 Ark. 122; *Meisenheimer* v. *State*, 73 Ark. 407, 84 S. W. 494."

See, also, the very recent cases of *Carpenter* v. *State*, *supra*; *Chandler* v. *State*, 205 Ark. 74, 167 S. W. 2d 142, and *Fielder* v. *State*, *ante*, p. 511, 176 S. W. 2d 233.

Finding no error, the judgment is affirmed.