MALONE v. RILEY.

5-1756                                              321 S. W. 2d 743

Opinion delivered March 16, 1959.

M. V. Moody and Joseph Brooks, for appellant.

Wright, Harrison, Lindsey & Upton, by Ronald A. May, for appellee.

ED. F. McFADDIN, Associate Justice. Malone, a pedestrian, was struck by Riley's car at a street intersection in Little Rock. Malone filed action for damages; and from the jury verdict in favor of Riley, Malone brings this appeal, urging the points now to be discussed:

I. *Malone says: "The Court erred in refusing plaintiff's attorney the right to seek out through questioning any and all persons on the jury, insured with any mutual benefit company where premiums were de-*

*termined upon the size of judgments given in personal injury actions for the previous year."*

We see no merit in this assignment. The Court allowed the attorney for Malone to interrogate the prospective jurors on their *voir dire:*[1]

"Are any of the jurors working for or have you been working for or do any of you or any of your kinspeople work for Travelers Insurance Company? Are any of the jurors employed by a liability insurance company or engaged in the insurance business? Have any of you ever been employed by a liability insurance company or do you own any stock in a liability insurance company at the present time?"

Some of our more recent cases involving the permissive extent to which counsel may go in the *voir dire* examination of jurors as regards insurance connections, are: *Dedmon* v. *Thalheimer,* 226 Ark. 402, 290 S. W. 2d 16; *De Long* v. *Green,* 229 Ark. 100, 313 S. W. 2d 370; and *Morgan* v. *Daniels,* 229 Ark. 811, 318 S. W. 2d 823. The naming of the Travelers Insurance Company in the *voir dire* examination was more than Malone's attorneys were entitled to. The situation in the case at bar is entirely similar to that in *Morgan* v. *Daniels, supra;* and that case is ruling here.

II. *Malone says: "The Court erred in allowing continual examination of plaintiff on a number of misdemeanors over the constant objection of plaintiff's attorney that he was doing it to prejudice the jury and that some asked about were too remote in time to be considered."*

In the *voir dire* examination of the jury, Malone's attorney asked if any of the jurors would be prejudiced against Malone because he had been convicted for drunk-

---

[1] Black's Law Dictionary defines *voir dire:* ". . . the preliminary examination which the Court may make of one presented as a witness or juror . . ."

enness.[2] After the jury was empaneled, the trial proceeded and Malone testified as a witness in his own behalf. Riley's attorney then asked Malone on cross-examination as to his specific convictions for law violations; and the Trial Court told the jury:

"In connection with this testimony, let me admonish you that it is admitted not for the purpose of establishing liability or going to the merits of the case that is on trial here today, but it is admitted as going to the credibility of this witness and for no other purpose, and that is the reason that it is being admitted. All right, you may proceed. You will consider it only for that purpose as only going to the credibility of this witness."

In the light of the limitation placed on the cross-examination by the Trial Court, we find no reversible error. Section 28-605 Ark. Stats. says: ". . . evidence of his former conviction of any crime by a court of this or any other state, territory or the United States, shall be admissible for the purpose of going to his credibility or the weight to be given to his testimony." See *Bockman* v. *Rorex*, 212 Ark. 948, 208 S. W. 2d 991.

III. *Malone says*: "*The Court erred in allowing doctor who had attended plaintiff to testify with regard to hearsay evidence contained in the Medical Record and to other things which plaintiff's doctor did not bring up when he testified.*"

Malone called Dr. Logue, who had treated Malone and who testified as to the extent of his injuries, etc.

---

[2] Here is the interrogation of Malone's attorney on the *voir dire*: "Ladies and gentlemen, I have a client who has had prior convictions for being drunk, two or three or four or five convictions for being drunk. This will be brought into you as a defense in the case, that he has been drunk numerous times and has been brought in; and testimony will be presented to you about him being drunk. I want to know if you at this time from the fact he has been drunk, if that would affect your verdict in this matter or whether you would just try the case on the fact of the negligence between the man who struck my client with an automobile at the intersection of 10th and Broadway. If you would go back in the jury room and say, 'Well, he has been drunk'—I want to know if that would prejudice your minds in giving a fair decision according to the proof and evidence in the case. If it would, I would like to know at this time. I want to know if it would affect your verdict or would you try it on the evidence at this time. Do you think it wouldn't prejudice you in any manner, a man being drunk, drunk previous to this? I think that is all, Judge."

Then Riley called Dr. Riggs; and it is about the testimony of Dr. Riggs that Malone objects. Malone had been injured a few minutes after midnight of the New Year. The ambulance carried him to the emergency room of the University Hospital; and Dr. Riggs was the physician on duty. The Court permitted Dr. Riggs to testify as to his examination of Malone and his findings as to Malone's condition.[3] This was entirely proper because Malone had previously called Dr. Logue; and the applicable statute (§ 28-607) reads in part:

". . . Provided, if two or more physicians or nurses are, or have been in attendance on the patient for the same ailment, the patient by waiving the privilege attaching to any of said physicians or nurses, by calling said physician or nurse to testify concerning said ailment, shall be deemed to have waived the privilege attaching to the other physicians or nurses."

At one place in his testimony, Dr. Riggs said the policeman told him that Malone was struck by a car; and the Court promptly — and correctly — ruled that such remark was hearsay; but the Court correctly allowed Dr.

---

[3] Here are pertinent portions of the testimony of Dr. Riggs:

"Q. Did you make a record of the time he was admitted to the emergency room?

A. Yes, sir, we always make a short sketch of the patient as he is admitted. The findings and the complaints and disposition when he comes in.

Q. Referring to records you made when he came in, will you tell the jury what you found upon his arrival at the hospital?

A. The patient apparently arrived at the emergency room at 1:33 A.M. That time is stamped on the emergency room sheet which is a red sheet and then the next note or the only note that is made is mine. We don't have sufficient number of interns and you have to make the original note and I noted here on January 1, '58, a 44-year-old colored male, drunk, . . . I testified that he was drunk, 44-year-old male, drunk, . . . I have here: 'Patient is crazy drunk and/or has hallucinations, gives wild story about being in Korean War . . . Blood pressure 125 over 90. Pulse, 96. Well developed, well nourished colored male, drunk, loudly complaining, says he has been shot. Examination of the eyes, ears, nose and throat, a prosthesis on the right.' . . . He had an artificial right eye. 'Trachea, midline. Head and neck, no trauma . . . Heart, no significant abnormalities. Abdomen, nor marks of trauma, soft, nontender. Hyperactive bowel sound.' . . . My next note in the chart after I had seen the X-rays, X-ray showed fractured pelvis through the acetabulum on the right with minimal deformity. Chest is clear. Will observe through the night and not try to do further studies until he has sobered up and calm."

Riggs to testify as to what he found Malone's condition to be when Dr. Riggs examined him.

IV. *Instructions.* The record discloses that every phase of the case was covered by the Trial Court's instructions, and Malone complains of only two of the number that were given. One related to the conduct of one confronted by a sudden emergency and was patterned after a somewhat similar instruction set out in our opinion in the case of *Coca-Cola Bottling Co. of Blytheville* v. *Doud,* 189 Ark. 986, 76 S. W. 2d 87. The other instruction, complained of by Malone, told the jury that Riley would not be liable unless he had been negligent. This instruction referred to the traffic mishap in which Riley had struck Malone as an "accident"; and Malone's specific objection to the instruction was: ". . . there is no testimony in the record which would tend to show that the accident was unavoidable." The use of the word "accident" was unfortunate, because the case was not tried on the theory of unavoidable accident; but since Malone's attorney used the word "accident" in its popular sense of "mishap,"[4] he cannot now claim that the Court should have corrected even his own verbiage. To set out these two instructions and discuss them in detail would serve no useful purpose. While we would not approve either as a model for clarity or verbiage, nevertheless we conclude that neither was fatally defective as against the objections offered to it.

Finding no reversible error, the judgment is affirmed.

---

[4] In *Pinchback Planting Co.* v. *Cloud,* 228 Ark. 31, 305 S. W. 2d 552, we discussed the difference in the meaning of the word "accident" in negligence cases, as compared to common parlance.