Thelma HARVEY *v.* C. C. CASTLEBERRY

75-100                                              529 S.W. 2d 324

Opinion delivered October 27, 1975
[Rehearing denied December 8, 1975.]

*Erwin, Bowie & Boyce,* for appellant.

*Hodges, Hodges & Hodges,* for appellee.

GEORGE ROSE SMITH, Justice. The appellant brought this action for personal injuries sustained when she was struck by the appellee's car, which rolled forward from a parked position. The verdict was for the defendant. The only argument for reversal is that the trial court unduly restricted the appellant's attorney in his *voir dire* examination of the jury panel about their being policyholders in a mutual insurance company writing automobile liability insurance.

Counsel first asked several questions about the jurors' being shareholders, directors, officers, or employees of any company writing automobile liability insurance. Counsel then, in chambers, sought the court's permission to ask this question: "Are any of you policyholders in any mutual insurance company writing automobile liability insurance policies?" The court ruled that the proposed question would not be proper.

The appellant's brief begins: "It was a known fact to both parties and their counsel that the appellee's automobile was insured by a mutual liability carrier whose adjuster, Keith Hulett, had made an investigation of the occurrence." That it may have been a fact known to counsel in the trial court is immaterial here, unless the fact appears in the record. Here it does not. Counsel for the appellee relies upon the omission, as he is entitled to do; for we do not reverse the trial judge on the basis of facts outside the record.

All that the record apparently contains — and certainly all that is shown by the abstracts — is a reference to Keith Hulett as "an adjuster for the Farm Bureau." There is no showing in the record either that the Farm Bureau is a mutual insurance company or that the trial judge knew it to be one. It is not argued that the question would have been proper even if no insurance of any kind had been involved.

See *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S.W. 2d 16 (1956). Nor need we speculate about the possibility that the trial judge might have taken judicial notice of the Farm Bureau's status, for no such request was made in the trial court (or here).

Inasmuch as the judgment must be affirmed, we may without embarrassment to counsel mention once more the basic requirements of Supreme Court Rule 9. The rule states that the abstract or abridgment of the record should consist of an impartial condensation, without comment or emphasis, of "only such material parts of the pleadings, proceedings, facts, documents, and other materials in the record as are necessary to an understanding of all questions presented to this court for decision." What the abstracter should strive for is to present a condensation of *all* the record that is necessary to an understanding of the case, *but nothing more*.

Here the appellant has done almost the reverse. The only question at issue is the propriety of the proposed question on *voir dire*, but the facts pertinent to that issue are not even touched upon in the appellant's abstract. (The appellee supplied the deficiency.) Yet the appellant did abstract testimony about the accident itself, although those facts are irrelevant here. Thus the court has been required to read matter not pertinent to the appeal but has not been furnished with an abstract of the really material part of the record.

Affirmed.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A. FOGLEMAN, Justice. I do not agree that appellant's right to question the jurors about their connections with mutual insurance companies writing liability insurance depended upon the status of the particular insurance carrier for appellee as a mutual company. Under Arkansas law, mutual companies may qualify to write casualty insurance. Ark. Stat. Ann. § 66-4210 (Repl. 1966). Each policy holder is a member of the insurer with all rights and obligations of membership. Ark. Stat. Ann. § 66-4216 (Repl. 1966). This makes the policyholder occupy virtually the same

status as a stockholder in an insurance corporation. See Ark. Stat. Ann. §§ 66-4217, 4218, 4221, 4222 (Repl. 1966). Even though the member's liability for the obligations of the mutual company are limited, he still may have pro rata contingent liability for the discharge of its obligations, and this may be as much as six times the annual premium on his policy. Ark. Stat. Ann. §§ 66-4205 (f), 4223, 4224, 4226, 4227 (Repl. 1966). The member is entitled to dividends based upon net realized savings and net realized earnings. Ark. Stat. Ann. § 66-4231 (Repl. 1966). The member may be assessed to make good a deficiency arising when the company's assets are less than its liabilities plus the minimum surplus it is required to maintain. Ark. Stat. Ann. § 66-4241, 4242 (Repl. 1966). Thus, there is at least some reason for a member of a mutual casualty insurance company to have a bias or prejudice against liability claims and to be extremely conservative in awarding damages. For these reasons, a personal injury claimant is well advised to exercise a peremptory challenge of any prospective juror who is a member of such a company. Of course, this thought is not original with me. It was well expressed more than 70 years ago by the Supreme Court of Iowa in *Foley* v. *Cudahy Packing Co.*, 93 N.W. 284, 119 Iowa 246 (1903):

> \*\*\* It is easy to understand that the interests of such companies lie on the defensive side of cases such as the one at bar. And if the defendant happen to be insured in some one or more of such companies, the interest becomes a direct and active one. That a defendant in an action of this character may be insured in some such company is immaterial of itself. But it is manifest that a plaintiff may not desire to have the jury which is to try his case made up, in whole or in part, of the agents or employes of such an insurance company. The fact of such employment would not constitute a ground of challenge for cause, but, as parties and their counsel cannot be expected to know personally every juror who may be called into the box, an examination sufficiently broad should be permitted to enable a party to determine upon his peremptory challenges. "It is the general and well-established practice to allow considerable latitude in the examination of persons called to act as

jurors, not only to facilitate the discovery of grounds for cause, but to enable the parties interested to discover any peculiarity or conduct, association, character or opinion, or any predilection, of the person under examination, or other circumstance which, in the opinion of the examiner might influence the person as a juror, and affect his verdict." *State* v. *Dooley*, 89 Iowa 584, 57 N.W. 414. \*\*\*

The record shows that appellant had been permitted to ask whether any of the prospective jurors was an officer, director, stockholder or employee of any insurance company writing automobile liability insurance or in anywise interested in an insurance company. The desired information could not possibly have been elicited by this inquiry. A mutual policyholder would not affirmatively answer such a question and appellant should have been permitted to further pursue the inquiry.

At the outset I should say that there is not the least intimation that appellant's attorney was not acting in the utmost good faith. Permission to ask the question was sought by this attorney at benchside out of the hearing of the jury. I should also say that I do not view appellant's argument to be so narrowly confined as it appears to the majority. The point relied upon is:

## I

THE COURT ERRED IN REFUSING TO ALLOW APPELLANT'S COUNSEL TO QUESTION THE PROSPECTIVE JURORS ON VOIR DIRE ABOUT THEIR BEING POLICYHOLDERS IN ANY MUTUAL INSURANCE COMPANY WRITING AUTOMOBILE LIABILITY INSURANCE POLICIES.

In support of his argument, appellant cites 47 Am. Jur. 2d 785, Jury § 195, pertaining to the importance of knowledge by litigants of all relevant and material matters that might bear on possible disqualification essential to a fair and in-

telligent exercise of the right to challenge for cause or peremptorily and *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S.W. 2d 16, where a question approved contained an inquiry similar to that appellant sought to ask.

In speaking of the scope of examination on voir dire this court has spoken clearly in *Missouri Pacific Transportation Co.* v. *Johnson*, 197 Ark. 1129, 126 S.W. 2d 931:

> What are the further questions that may be asked by the court, or by the attorneys in the case? The answer is that they include any pertinent inquiry respectfully addressed through which qualification may be determined, or by which counsel, regardless of the juror's qualification, may secure information upon which to predicate peremptory challenge. Discretion of the court, to which reference is made in the last sentence of § 16 of the initiated Act, goes to the proposition of curbing improper questioning. It does not invest trial courts with an arbitrary, all-powerful authority to transform discretion into prohibition; nor does it require that in the process of ascertaining the desired facts counsel must utilize the court as a conduit through which communication must be megaphoned to jurymen by way of the dais.

See also, *Gurley* v. *State*, 164 Ark. 397, 262 S.W. 636. We have also said in *Clark* v. *State*, 154 Ark. 592, 243 S.W. 868, where counsel sought to inquire whether proposed jurors were members of the Ku Klux Klan:

> *** It does not follow, however, from the fact that the information to be elicited might not constitute disqualifying bias that appellant was not entitled to propound the inquiry. On the contrary, we think that he was entitled to make the inquiry for the purpose of determining in what he should exercise a peremptory challenge allowed by the statute. ***

> The right of peremptory challenge is just as important and valuable to an accused person as the right to challenge for cause, and he is entitled to the same

latitude in the examination of a proposed juror for either purpose. This examination must, however, be conducted in good faith, and is subject to the discretion of the trial judge. ***

We have said that it was proper to inquire into the attitude of a particular juror and his connection with a resolution adopted by his church commending county and court officials in their enforcement of criminal laws as a basis for intelligent exercise of peremptory challenges in a case in which the defendant was charged with operating a gambling house. *Sorrentino* v. *State*, 214 Ark. 115, 214 S.W. 2d 517. In *Corley* v. *State*, 162 Ark. 178, 257 S.W. 750, we said that a trial judge properly permitted one charged with selling intoxicating liquors to inquire into contributions made by prospective jurors to a law and order league, and into the aversions of certain veniremen to the crime of selling intoxicating liquors "because it was essential for the accused to be in possession of this information in order that he might intelligently exercise the peremptory challenges which the law gives him."

Counsel here avoided naming any particular company in framing his question. Thus, the prohibitions emphasized in *DeLong* v. *Green*, 229 Ark. 100, 313 S.W. 2d 370, have no application. That case itself supports the inquiry appellant wanted to make. First, it was there pointed out that, in *Williams* v. *Cantwell*, 114 Ark. 542, 170 S.W. 250, the court, in disapproving the actions of plaintiff's counsel in statements made and questions propounded to prospective jurors, because they unnecessarily advised the jurors that the defendant was insured against liability by a named company and would not be required to pay any judgment against him, had stated how plaintiff's counsel might have conducted the inquiry, by saying:

*** Information as to any juror's connection with any insurance company could have been obtained in a less dramatic manner by asking each of the jurors if he represented or was connected with any casualty company insuring employers against liability, or if he was connected with any insurance company, or any other proper question which might have tended to disclose

whether any juror had any bias or prejudice likely to influence his verdict one way or the other; and, had any juror answered that he was so connected with any such insurance company, it would not have been improper to have permitted a more minute inquiry of such juror. \*\*\*

And then, this court, in an effort to reduce uncertainty and avoid needless appellate review in such matters, announced its preference for the simplest and fairest procedure in these words:

> \*\*\* Questions about the veniremen's insurance connections should refer only to insurance companies in general; a particular company should not be named when the information wanted can just as well be obtained by the use of general questions.

I submit that, if a prospective juror actually has an interest in an insurance company insuring a particular defendant against loss in a particular case, he is subject to a proper challenge for cause, even though the insurance company is not a party to the suit, because it has a pecuniary interest in the outcome of the case. *Murphy* v. *Cole*, 338 Mo. 13, 88 S.W. 2d 1023, 103 ALR 505 (1936) and Annot. p. 511; Annot., 56 ALR 1418, 1460, 1464, 1477 (1928).

The basis for a finding of incompetency for bias and prejudice was stated long ago. It appears in *Collins* v. *State*, 102 Ark. 180, 143 S.W. 1075, as follows:

> \*\*\* In order for a juror to be competent, he should be wholly indifferent both as to the person who is tried and the case for which he is tried. He must be free from bias or prejudice or from any fixed opinion as to the merits of the case so that he will act with entire impartiality in deciding the questions of fact and in arriving at his verdict. The bias or prejudice which will render a juror incompetent to sit in a case may arise from various causes, and depends largely upon the facts and circumstances of each case. \*\*\*

A financial interest of a juror in one of the parties is certainly

disqualifying. In *Caldarera* v. *Giles*, 235 Ark. 418, 360 S.W. 2d 767, we held that the endorser of a note on a bank loan made to a plaintiff to pay a debt of the plaintiff to a corporation of which the juror was a stockholder, was presumed as a matter of law to be under a disqualifying bias. The precedent cited was *Gershner* v. *Scott-Mayer Comm. Co.*, 93 Ark. 301, 124 S.W. 772, where we indicated, if we did not actually hold, that an officer or stockholder of a corporation to which a party to the litigation was indebted was presumed to be under a disqualifying bias. The Chief Justice, concurring in *Caldarera*, appropriately said:

> *** To permit one to serve on a jury, where it appears from the record that he *could* be financially interested in the outcome of the case, would, in my opinion, stagger the confidence of the public in our juries, and, in fact, strike at the very heart of the jury system.

My view of the matter is definitely supported by the overwhelming weight of authority. No better expression could be given than that appearing at 47 Am. Jur. 2d 903-4, Jury § 333:

> *** The broad general rule is that provided that counsel acts in good faith, he may, in one form or another, question prospective jurors on their voir dire respecting their interest in or connection with liability insurance companies. It is obvious that if the plaintiff is denied absolutely the right to interrogate jurors with reference to their possible connection with or interest in insurance companies, his means of ascertaining whether causes for challenge exist, or whether it is wise and expedient to exercise his right of peremptory challenge, is materially limited and the overwhelming majority of the courts sustain the right of counsel for the plaintiff, in a personal injury or death case, so long as he acts in good faith, for the purpose of ascertaining the qualifications of the jurors, and not for the purpose of informing them that an insurance company is back of the defendant of record, to interrogate prospective jurors by one form of question or another with respect to their interest in, or connection with, indemnity insurance companies. Right

to such examination of a prospective juror is basic to an intelligent exercise of challenges for cause or peremptory challenges. Thus, if an employer is indemnified in a liability insurance company against liability for injuries to employees, an employee suing for injuries received is entitled to know if any prospective juror is interested in the insurance company, and so it is proper to question the prospective jurors, collectively or individually, upon their voir dire, regarding any possible interest that they may have in such company. The fact that the insurance company is not named as a party to the action is no objection, for the bias of the juror is not to be determined by this fact. Nor is it any objection to say that counsel may protect his client by using a peremptory challenge. It is his right first to learn the facts, and he must do so to exercise intelligently his right to challenge peremptorily.

See also Annot., 56 ALR 1418, 1456, et seq. (1928); 74 ALR 849, 860 (1931); 95 ALR 388, 404 (1935); 105 ALR 1319, 1330 (1936); *Smith* v. *Star Cab Co.*, 323 Mo. 441, 19 S.W. 2d 467.

We have at least tacitly taken this view of such an inquiry. Even when the defendant's attorney offered to prove that no prospective juror was connected with his liability insurance carrier's general or local agency and that none had any interest as stockholders, we approved the trial court's permitting plaintiff's attorney to ask each member of the panel whether he had any connection or relationship with the named company and if he had any connection with any company that insures people against liability. *Halbrook* v. *Williams*, 185 Ark. 885, 50 S.W. 2d 243. We then said:

> *** The jurors or some of them might have had some relationship or connection with the particular company mentioned or some other surety company so as to make them undesirable jurors, and still not have been connected with any agency or held any stock in the particular company. We have many times held that similar questions may properly be asked the veniremen for the purpose of intelligently exercising the right of challenge. ***

Other cases which clearly recognize the right to ask prospective jurors whether they had been in the employ of any company writing liability insurance or were interested as an employee, agent or stockholder of such a company in order to more intelligently exercise the right of challenge include *Sutton* v. *Webb*, 183 Ark. 865, 39 S.W. 2d 314; *Bourland* v. *Caraway*, 183 Ark. 848, 39 S.W. 2d 316; *Smith Arkansas Traveler Company* v. *Simmons*, 181 Ark. 1024, 28 S.W. 2d 1052.

I am not unaware of the holding in *Morgan* v. *Daniels*, 229 Ark. 811, 318 S.W. 2d 823 and in *Malone* v. *Riley*, 230 Ark. 238, 321 S.W. 2d 743. In *Malone*, the court summarily dismissed the contention on the basis of *Morgan*. But the court did not hold that the question was improper in either case. In both cases, the court held that there was no prejudice because, in answers to other questions, the plaintiff got more information than he was entitled to. In *Morgan*, the court also took into consideration the fact that when the court inquired into the interest or connection the prospective jurors had in a named company, plaintiff's counsel showed that he was satisfied with the information obtained by failing to pursue questions he had been given permission to ask. I do take issue with language in the opinion in *Morgan*, wherein it was said:

> *** Since any holder of a mutual policy on the panel would have recognized that his or her company was not involved, they would likewise have known that their dividend credit would not be affected by the outcome of the litigation.

In my opinion this is a non sequitur. It might be apt insofar as a challenge for cause is concerned, but it is obvious to every trial lawyer that wisdom would dictate that a mutual policyholder is an appropriate subject for peremptory challenge in a case of this sort. No advocate representing a personal injury claimant would hesitate to say that, if he knew from other sources that a prospective juror was a holder of a mutual liability insurance policy, he would be a prime subject for consideration when peremptory challenges are considered. Under our cases on scope of voir dire, such an inquiry should be permitted. Here again it is the general rule that such an inquiry should be permitted. Annot. 4 ALR 2d

761, 814 (1949). If *Malone* and *Morgan* hold otherwise, I would not hesitate to overrule them.

Neither case considered *Dedmon* v. *Thalheimer*, 226 Ark. 402, 290 S.W. 2d 16, where we reversed the judgment because the plaintiff's attorney, in a case where an insurance company was involved, was not, as here, permitted to ask the following question:

> *** Have you ever been in the employ of any liability insurance company, or do you own any stock in any liability insurance company at the present time, or are you insured with any mutual benefit liability company where your premiums are determined upon the size of judgments given in personal injury actions for the previous year?

We said:

> In the trial of a civil action in circuit court in this State, each side has the right to excuse three veniremen peremptorily. In cases where the defendant is covered by liability insurance, the plaintiff might want to excuse any one that he suspects may be either biased or prejudiced where insurance is involved; and he would have a perfect right to exercise a peremptory challenge for that reason, if he so desired. The test of whether counsel may ask questions of veniremen in regard to insurance is whether the questions are propounded in good faith. If counsel, in good faith, thinks that liability insurance is involved, then he may ask questions calculated to bring to light any bias or prejudice a venireman may have for or against insurance companies. The thing works both ways: A person may have connections with an insurance company that would cause him to be biased in favor of such companies. On the other hand, a venireman may be, for some reason, prejudiced against insurance companies. A lawyer trying a case would be rather careless if he failed to ascertain as well as possible if any one on the venire was biased or prejudiced on a question involved in the litigation, even though such question would be only indirectly involved. Very seldom do lawyers on

734

both sides know the connections and background of all the veniremen or whether they would have an opinion as to the merits of the case. And the purpose of the *voir dire* examination is to enable counsel to ascertain whether there is ground for a challenge for cause, or for the exercise of a peremptory challenge. Of course, questions about insurance would be improper if counsel does not in good faith believe that some insurance company is interested in the outcome of the litigation. *Gill* v. *Whiteside-Hemby Drug Co.*, 197 Ark. 425, 122 S.W. 2d 597. But here, it is admitted that insurance is involved, and there is no indication of bad faith.

However the majority may view *Dedmon*, I view it as support for the propriety of this inquiry.

I am authorized to state that Mr. Justice Byrd joins in this opinion.