Joseph H. WESTON *v.* STATE of Arkansas

CR 77-238                                      576 S.W. 2d 705

Opinion delivered February 12, 1979
(In Banc)

Appellant, *pro se.*

*Bill Clinton,* Atty. Gen., by: *James E. Smedley,* Asst. Atty. Gen., for appellee.

STEPHEN A. MATTHEWS, Special Chief Justice. Appellant seeks relief in this Court from an indictment returned against him by an Independence County Grand Jury charging him with four counts of perjury. A brief statement of the factual background follows.

Appellant, the editor and publisher of a Sharp County newspaper, published an article in the September 19, 1977 issue of his paper alleging the existence of a prostitution ring, and other vice operations and narcotics traffic in Independence County. An Independence County Grand Jury investigated the matter and concluded its activity on November 19, 1977 by returning a four-count indictment for perjury against appellant, arising out of his testimony before the Grand Jury.

Throughout the course of the Grand Jury investigation, appellant filed numerous pleadings in the Independence Circuit Court, including a Motion to Quash the Grand Jury on November 3, 1977. The thrust of this motion was that the Grand Jury was a tool of corrupt law enforcement officials and judges who had set out on a course designed to harrass and intimidate appellant and to drive him and his newspaper out of business.

Because of the pendency of a lawsuit in Lawrence County in which appellant and Circuit Judge Andrew Ponder were adversary parties, Judge Ponder recused himself, and on October 25, 1977, Chancellor Robert Dudley of Pocahontas was

assigned to

> ". . . hear All Matters Pertaining to Joseph A. Weston's Appearance Before the Independence County Grand Jury. This assignment includes all ancillary proceedings which may arise in connection with said cause and proceedings subsequent thereto."

This assignment was made by the Chief Justice of this Court pursuant to the authority of Arkansas Statute 22-142.

Appellant asserts in his Brief and in oral argument that on November 18, 1977, Judge Dudley "abandoned" the case and that Judge Ponder erroneously resumed jurisdiction and on November 19, took certain improper action, including granting immunity to a witness named Patterson and "forcing" Patterson to testify against appellant, accepting the report of the Grand Jury, ordering the arrest of appellant, and fixing the amount of appellant's bail bond. One of the troubles with appellant's contentions is that the official record before this Court does not show that Judge Ponder took this action. Only the statements of appellant in his brief and his various pleadings, and a copy of a newspaper clipping appellant lodged with this Court, indicate such action by Judge Ponder.

It is virtually impossible for us to determine the relief appellant seeks. In his Reply Brief he says:

> "An examination of my Briefs and pleadings will show that my appeal is NOT directly based upon the indictments themselves, per se.

> "At the risk of being rebuked for violation of various rules of court procedure, I am directly appealing the erroneous conduct of two wilful judges and a crooked prosecuting attorney. The grand jury was only the willing and ignorant tool and these two judges — and their courts — and of Blankenship."

In another place in his Reply Brief, appellant says he seeks from this Court:

"An order to quash en toto all activities of the corrupt Independence County Grand Jury from October 18, 1977 to November 19, 1977, inclusive.

"A reversal of all orders of all judges, written or otherwise, oral or otherwise, entered in the court record or not entered in the court record, issued or acted upon in open court or in secret sessions, or otherwise acted upon, lawful or unlawful, that were issued in any way in connection with or in association with activities of the Grand Jury during its entire term."

Apparently appellant hopes this Court will fashion some unspecified form of relief for him, delivering him from, and rebuking, those whom he counts as his oppressors.

It should be noted that appellant has not moved that the indictment against him be quashed. The nearest he has come to such a request is his motion to quash the Grand Jury panel filed on November 3, 1977 and denied by Judge Dudley on November 4. This took place two weeks before the indictment was returned against appellant.

We decline, at this stage of the proceedings, to disturb the indictments against appellant for three reasons.

First, there is no appealable order before us. See *Alexander* v. *State*, 260 Ark. 785, 545 S.W. 2d 606 (1976); and *State* v. *Langstaff*, 231 Ark. 736, 332 S.W. 2d 614 (1960). Appellant has been indicted, but he has not been convicted of any offense. We have been cited to no authority holding that a right of appeal exists from an indictment by a Grand Jury. Rule 36.1 of the Rules of Criminal Procedure provides in part:

"Any person convicted of a misdemeanor or a felony by virtue of a trial in any circuit court of this State has the right to appeal to the Supreme Court of Arkansas."

This provision is practically identical to Ark. Stat. 43-2701.

Because of the absence of a final order of the trial court settling some issue against appellant, or finding him guilty of some offense, an appeal to this court will not lie at this stage of the proceeding.

Second, we are committed to the rule that we will not review matters not in the record. *Harvey* v. *Castleberry*, 258 Ark. 722, 529 S.W. 2d 324 (1975); *Poindexter* v. *Cole*, 239 Ark. 471, 389 S.W. 2d 869 (1965); *Becker* v. *Rogers*, 235 Ark. 603, 361 S.W. 2d 262 (1962); and *Jernigan* v. *Pfeifer Brothers*, 177 Ark. 145, 5 S.W. 2d 941 (1928). In *Becker*, we said:

> "At the outset, let it be mentioned that the briefs contain, and make reference to, many matters that do not appear in the record. Appellee's brief, in large measure, is devoted to extraneous material, and appellants, in their reply brief, to some extent follow the same practice. The fact that we do not consider statements beyond the record is so axiomatic as to require no citation of authority."

The "record" appellant presents us pertaining to the alleged actions of Judge Ponder consists of a newspaper account of appellant's indictment and appellant's own assertions in his brief.

Nor will we afford relief which is not first sought in the trial court and denied. *Bond* v. *State*, 230 Ark. 962, 328 S.W. 2d 369 (1959); *Hicks* v. *State*, 225 Ark. 916, 287 S.W. 2d 12 (1956); and *Yarbrough* v. *State*, 206 Ark. 549, 176 S.W. 2d 702 (1944).

The only relief appellant sought in the Independence Circuit Court which he now seeks here, as far as we can ascertain, is that the Independence County Grand Jury be quashed from its inception. The *record* filed in this Court, disregarding appellant's assertions and the newspaper account, which cannot be treated as a "record," does not estabish any basis for the granting of such relief.

Third, appellant's brief is in flagrant disregard of Rule 9

of this Court. His statement of the case, instead of being a concise statement of the case, without argument, as required by Rule 9 (b) is a highly partisan account of what he believes to be injustices perpetrated upon him by those whom he perceives to be his enemies. More importantly, the abstract is in no sense an impartial condensation of the record, without comment or emphasis, as required by Rule 9(d).

Rule 9 does not exist as a snare for unwitting litigants or for those who appear before the Court, pro se. In fact, we are inclined to be more lenient in invoking Rule 9 in the cases or persons appearing pro se than in other cases. But the jurisdiction of this Court is limited to appellate jurisdiction only. Arkansas Constitution, Article 7, Section 4; Ark. Stat. 27-2101. We do not try anew all litigation or come to the assistance of appellants, pro se or otherwise, by combing the record and re-writing their pleadings for them and re-shaping their prayers into some form of relief which this Court may grant. We look only to see if the record shows that the trial court committed an error prejudicial to the appealing party. To aid in a speedy determination of appeals we, along with most other appellate courts, have promulgated Rule 9(d) placing upon appellants the burden of furnishing an abstract of the record consisting of an impartial condensation, without comment or emphasis, of only such material parts of the pleadings, proceedings, facts, documents and other matters in the record as are necessary to an understanding of all questions presented to this Court for decision.

Our refusal to afford appellant relief at this stage of the proceedings is based on all or any of the three reasons set out above, i.e., no appealable order is before us, the record does not support appellant's position and there has been no compliance with Rule 9.

We do not hold that appellant is precluded from questioning the validity of the indictment which the Grand Jury returned against him. Nothing in this opinion prejudices a proper attack on the indictment. If appellant is tried and convicted and then chooses to attack the indictment by pleadings presented first in the trial court, basing his attack on

matters reflected in the record, certainly the validity of the indictments may be examined. In fact, we take this occasion to observe that if the regular presiding Circuit Judge of Independence County, who had recused himself from taking any part in the Grand Jury proceedings involving appellant, did in fact resume jurisdiction over matters involving appellant and take discretionary action, it may well be that the indictment cannot stand if it is questioned on an appeal from a conviction. *Bolden* v. *State,* 262 Ark. 718, 561 S.W. 2d 281 (1978). If no stenographic record of the proceedings was made, our procedure permits the omission to be supplied by a bystander's bill of exceptions. *Graham* v. *State,* 264 Ark. 489, 572 S.W. 2d 385 (1978).

Affirmed.

Special Justice RICHARD H. WOOTTON joins in the opinion.

HARRIS, C.J., and FOGLEMAN, J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The appellant, Joseph H. Weston, formerly published a newspaper known as the Sharp Citizen. I understand the word Sharp is used in honor of or to designate the county rather than in its ordinary meaning. There is little doubt that appellant had the ability to arouse the ire of public officials and other citizens to a degree seldom equalled by any editor or publisher. Nevertheless, he was producing a newspaper which was entitled to all the rights and protection enjoyed by other media vehicles pursuant to the state and federal Constitutions. Although his publication was not in conformity with our standard publications, it nevertheless was a "freedom of the press" product.

Ark. Const. Art. 2, § 6, states:

> Liberty of the press and of speech — Libel. — The liberty of the press shall forever remain inviolate. The free communication of thoughts and opinions is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right. In all criminal prosecutions for libel the truth may be given in evidence to the jury; and, if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party charged shall be acquitted.

This provision has been in full force and effect since 1874, thereby giving the distinct impression that the people of Arkansas are satisfied with it. This Article has built into it a measure of protection to the innocent people and proper restraints against abuse of the press. It provides all persons may freely write and publish their sentiments on all subjects, *being responsible for the abuse of such right.* It further provides that the truth of any such matters so published shall be a defense to any action for libel. I know of no instance where a judgment has been rendered against appellant on account of articles published by him.

Appellant is not a lawyer, and there is no question but that this Court would be justified under the normal interpretation of our rules in dismissing his appeal. However, under unusual circumstances, the Court has waived the rules. In all probability, we are going to review this case again. Nevertheless, we ought to be able to rule on it with some degree of finality the next time it comes. We will be unable to do so unless we, at least, give some guidelines to be followed before it is again before us.

It can be determined from appellant's brief that he is clearly urging he has been punished for exercising his rights as guaranteed by the Constitution. We are also able to determine that some of the events which occurred are not in the record, nor will they be in the record when it is next before us. If one judge was relieved of all responsibilities of the Joseph H. Weston matter, and another undertook to handle these same matters, then it was not proper for the judge so relieved

to assume jurisdiction again without proper authority. It is alleged by appellant, and not disputed by the state, that the recused judge happened to be in Independence County on Saturday, November 19, 1977, when the Grand Jury returned the indictments against the appellant. The recused judge granted immunity to a witness before the Grand Jury, denied a motion made by appellant, met with the Grand Jury, and accepted their report. Only the judge having jurisdiction of the case should have performed these acts, if in fact they were performed, and the record, such as it is, appears to establish these facts. When the case arrives here again, this matter will still be unresolved because it is not "officially" in the record and we will then be compelled to send it back.

Essentially, appellant is asking this Court to dismiss the indictments. The state admits an appeal will lie from the denial of a motion to dismiss an indictment. If this is the law, then we really have an appealable order before us even though the words are not expressed in those exact terms. There is no question that appellant raised every issue possible at every stage of the proceedings. His ideas are not presented for the first time on appeal.

The minutes of the Grand Jury have apparently never been furnished to appellant. If the prosecutor was in fact directing the whole proceedings and was present during the deliberation of the Grand Jury, it is a reversible error. Some parts of the record were found after this Court entered a mandate to the lower court. The record is still technically incomplete.

Appellant earnestly contends throughout every stage of the proceedings that he is being persecuted for the exercise of his freedom of speech. If only a portion of his allegations are true, he has merit to his arguments. Our Bill of Rights was instituted to end the restraints which at one time had been imposed upon the people of England. These rights have, no doubt, been a mighty force in guiding this nation to its present degree of greatness among the nations of the world and remains a cornerstone or foundation to our Republic and its democratic processes. There are times when we feel these privileges and rights are abused, but such thoughts are usual-

ly of a short duration. Although appellant may have been viewed as a pusillanimous polecat by some people, he may have been nevertheless exercising his rights as guaranteed by the Constitution.

In view of the state of the, record and all of the implications and allegations, I would reverse and return this case to the lower court for a fresh start from the beginning, if there is still a desire to prosecute the appellant.