Tommy DONOHO *v.* C.C. DONOHO

CA 86-422                                        737 S.W.2d 170

Court of Appeals of Arkansas
Division II
Opinion delivered September 30, 1987
[Rehearing denied November 4, 1987.]

*Gean, Gean & Gean,* by: *Lawrence W. Fitting,* for appellant.

*Jones, Gilbreath, Jackson & Moll,* by: *Robert L. Jones, Jr.* and *Charles R. Garner, Jr.,* for appellee.

JAMES R. COOPER, Judge. Tommy Donoho appeals from a judgment entered on a jury verdict against him in the amount of $78,054.08 with interest at ten percent from September 23, 1980, and dismissing his counterclaim for damages resulting from alleged misrepresentations of fact by the appellee, C.C. Donoho. We find no merit in the five points of error advanced by the appellant, and we affirm.

The appellee brought this action on a promissory note dated September 23, 1980, which was executed by the appellant. The note was in the principal sum of $78,054.08, bearing interest at ten percent per annum and due on demand. In a second count, the appellee alleged that the appellant had orally agreed to divide with the appellee the proceeds from the sale of a lake house, asserting that, although the title to the lake house property was in the name of the appellant, the property had been conveyed to the appellant with the understanding that any profits from the appellant's sale of the property would be divided equally with the appellee. The appellee further alleged that the lake house had been sold by the appellant for $85,000.00, and that he had received no share of the proceeds.

In his answer, the appellant asserted that the note had been obtained through fraudulent misrepresentations of fact, and he further pled the affirmative defenses of statute of limitations,

laches, and estoppel. He denied the allegations concerning the asserted agreement to divide the proceeds of the lake house property. By way of counterclaim, the appellant sought damages stemming from the alleged misrepresentations of the appellee.

At trial, the appellee testified that he and the appellant entered into their father's insurance agency in 1946. At that time, the father and his two sons each had an equal share in the business. During the 1960's their father transferred his one-third interest to four of his grandchildren. Two of the appellant's children and two of the appellee's children thus obtained an undivided one-twelfth interest in the agency. The appellant's son-in-law, Phillip Merry, later came into the business as an employee. The appellee stated that, as a result of a misunderstanding between himself and Merry, Merry offered to purchase the appellee's interest in the agency. However, the appellee did not sell his interest to Merry, but instead sold his interest and that of his children to the appellant for a price based on three times the agency's annual commissions plus book value. With respect to the lake house property, the appellee testified that it had been conveyed to the appellant with the understanding that, when it was sold, the appellee would receive one-half of the profits of the sale.

The appellant denied having agreed to share the proceeds of the sale of the lake house with the appellee. Concerning the sale of the appellee's interest in the agency, the appellant testified that, shortly before the sale took place, he learned that Merry and the appellee had been engaged in negotiations for the purchase of the appellee's interest. He stated that at that time Merry had offered him a sum equal to three times earnings, and that it was well worth three times earnings or more in order to gain control over the agency. After several days of further negotiations the agreement which is the subject of this suit was reached. The appellant testified that, during negotiations, he suggested calling Bubba Benton, an experienced real estate agent, to obtain his opinion about the prices then being paid for insurance agencies. According to the appellant, the appellee called Benton in his presence, and then told the appellant that Benton had informed him that insurance agencies were selling for two to three times annual earnings. The appellant stated that, on the basis of Benton's relayed opinion as to value, he agreed to pay three times annual

commissions.

Benton testified that, although he recalled having a conversation with the appellee during the time in question, he could not recall what he had told the appellee concerning the value of insurance agencies. Although he did not recall the specifics of his conversation, Benton stated that he felt he would have told the appellee that almost any agency was worth one times annual commissions; a good agency would be worth one and one-half times annual commissions; and an excellent agency for which the personnel would remain unchanged would be worth two times annual commissions.

The appellee was recalled to the stand, and testified that he had no recollection of any conversation with Benton and, regardless of what Benton might have told him had such a conversation occurred, he was not willing to accept less than three times annual commissions, as had been offered to him by Merry. He further stated that, if he had talked to Benton, he would have told the appellant exactly what Benton said whether it was good, bad, or indifferent, but he would have adhered to his own opinion that his interest should be sold on the basis of three times annual commissions.

The trial court entered judgment on a jury verdict in favor of the appellee for the amount due on the note plus ten percent interest from the date of execution, and dismissed the appellant's counterclaim for damages resulting from misrepresentation. The appellee's claim for a portion of the proceeds from the sale of the lake house property was also dismissed. From these judgments against him, the appellant brings this appeal. The appellee does not appeal from the judgment concerning the lake house property.

██ The appellant first contends that the jury verdict with respect to the note and misrepresentation issues was against the clear preponderance of the evidence. On appellate review of jury verdicts, we review the evidence in the light most favorable to the verdict, and we will not disturb the verdict if it is supported by substantial evidence. *Duggar* v. *Arrow Coach Lines, Inc.*, 288 Ark. 522, 707 S.W.2d 316 (1986). In the case at bar, there was evidence that there was no conversation between the appellee and Benton; that, if such a conversation took place, no misrepresenta-

tions were made with respect to the content of that conversation; and that the negotiations for the sale of the agency began with an offer by the appellant's son-in-law to purchase the agency for a price based on three times annual commissions. Moreover, the appellant admitted that it would be well worth paying such a price to gain control of the agency. Finally, the appellee testified that the figure ultimately agreed upon was based upon his own opinion of the agency's value, and that he would not have sold it for less. On this testimony, we cannot conclude that the jury's verdict is not supported by substantial evidence.

■ The appellant also argues that the trial court erred in failing to direct a verdict in his favor with regard to that portion of the appellee's suit which concerned the lake house property. Although the appellant ultimately prevailed on that point when the jury found in his favor and the appellee's claim for a share in the proceeds of the sale of the house was dismissed, he asserts that the failure to direct a verdict in his favor resulted in his prejudice. To support this argument, the appellant suggests that the jury was inclined towards granting the appellant something in this case, and compensated for its verdict in favor of the appellee on the note by giving the appellant a favorable finding with respect to the lake house issue. He further suggests that, had the latter issue been removed from the jury's consideration, the jury's favorable inclination toward the appellant would have been expressed in the form of a verdict for the appellant on the note and misrepresentation issues. This theory is unsupported by anything to be found in the record in the case at bar, and we find it to be unpersuasive. To accept the appellant's assertion of prejudice, which is made without reference to facts in the record which might support it, would be tantamount to presuming that any error which may have occurred was prejudicial to the appellant, even though the appellant ultimately prevailed on the issue with which the asserted error was concerned. Error is not presumed to be prejudicial, *Jim Halsey Co., Inc.* v. *Bonar*, 284 Ark. 461, 688 S.W.2d 275 (1985), and we do not reverse the trial judge on the basis of facts outside the record. *Harvey* v. *Castleberry*, 258 Ark. 722, 529 S.W.2d 324 (1975). We hold that, under the circumstances here presented, any error resulting from the trial judge's failure to direct a verdict in the appellant's favor on the lake house issue was harmless.

█ Next, the appellant contends that the trial court erred in permitting the appellee to introduce erroneous calculations of the amount of interest due on the note. We find no merit in this contention, because the jury did not attempt to calculate the interest, but merely returned a verdict for the face amount of the note, plus interest and attorney's fees. Any error resulting from the introduction of erroneous interest calculations was thus rendered harmless. *See Insured Lloyds* v. *Mayo*, 244 Ark. 82, 427 S.W.2d 164 (1968).

The appellant also argues that the jury was improperly instructed. The trial court instructed the jury that, in order to sustain the defense of misrepresentation, the appellant must prove that the appellee made a false statement of material fact, knowing that it was false, and intending for the appellant to act in reliance upon it. They were instructed that the appellant must have been justified in his reliance, and must have in fact relied upon the misrepresentation to his damage. The court further instructed the jury that a statement as to value was only a statement of opinion and not a representation of fact. The appellant does not find fault with the court's misrepresentation instruction, but argues that the instruction regarding opinions misled the jury because "[a]lthough the statement of Bubba Benton as to the valuation of insurance businesses was an opinion, the publication of that opinion to third parties under the circumstances of this case, was a representation of fact."

█ The appellant's theory of the case was that material facts regarding a conversation between the appellee and Benton were misrepresented to him, and he was entitled to have the jury instructed on his theory. By the same token, the appellee was equally entitled to have the jury instructed on his theory of the case, i.e., that he had not misrepresented any facts to the appellant, and that the value placed upon the agency was based upon his own opinion of its worth. The appellant had an opportunity to argue to the jury the position he now argues to us, and an opportunity to offer an instruction stating that position had he desired to do so. Because the trial court was not presented with a correct instruction detailing the appellant's theory of the publication of Benton's opinion as being a misrepresentation of fact, and because the court's instruction regarding opinions was a correct statement of the law supported by the evidence, we find no

merit in this contention. *See Simmons* v. *Frazier*, 277 Ark. 452, 642 S.W.2d 314 (1982).

The appellant also contends that the trial court erred in not giving his proffered instruction that, if a person makes a representation without knowing whether it is true or false, or without regard to its truth or falsity, he may be found to have made the representation recklessly and with indifference to the consequences, and that if the jury found that those conditions existed and that the appellant relied upon the representations to his detriment, it should return a verdict in his favor for the amount they found him to have been damaged. Although the proffered instruction did contain a correct statement of the law, it was abstract in that none of the evidence at trial tended to show that the appellee made any representations without knowledge of their truth or with indifference to their consequences. To the contrary, the evidence with respect to the alleged misrepresentations showed that, if such misrepresentations were in fact made by the appellee, they were made deliberately for the purpose of obtaining a higher price for the agency than would have been offered in the absence of such misrepresentations. We think that the proffered instruction was potentially misleading and could have resulted in a finding of liability upon an issue unsupported by proof, and hold that the trial judge correctly refused to give the instruction. *See Courson* v. *Chandler*, 258 Ark. 904, 529 S.W.2d 864 (1975).

Finally, the appellant argues that other instructions offered by him were erroneously refused. We find no merit to these arguments because each of the rejected instructions was fully covered by other instructions given by the court. A party is not entitled to his particular preference in the wording of jury instructions. *Hough* v. *Continental Leasing Corp.*, 275 Ark. 340, 630 S.W.2d 19 (1982).

Affirmed.

CORBIN, C.J., and COULSON, J., agree.