JOHN A. DODDS v. JAMES E. DODDS, ET AL

5-4828                                   438 S.W. 2d 54

Opinion Delivered March 10, 1969

*Charles E. Yingling, Jr. & Comer Boyett, Jr.* for appellant.

*Martin, Dodds, Kidd, Hendricks & Ryan* for appellees.

GEORGE ROSE SMITH, Justice.    This is a partition suit filed by the appellant, John A. Dodds, as one of four tenants in common.    After an extended hearing the chancellor entered a decree which first adjusted the accounts among the four owners and then ordered a sale of the property, with the proceeds to be divided equally after the various debits and credits had first been taken care of.    The appellant does not question the order of sale, but he does insist that the court should have allowed him more money than it did for his improvements and maintenance expenses.

The principal tract, a 143-acre farm in White county, was formerly the homestead of J. B. Dodds, Sr., and

his wife, Mattie Dodds. At Mr. Dodds' death in 1939 title passed to his widow as the surviving tenant by the entirety. Mrs. Dodds occupied the land with her son, John, the plaintiff, until her death in 1962. The property was then inherited by her four sons, John, James, W. P., and J. B., Jr. In 1964 J. B. Dodds, Jr., died testate, leaving all his property to his widow, the appellee Loukate Dodds, who is now the fourth tenant in common. A second tract of 105.96 acres was purchased in 1943 and is also owned by the three surviving Dodds brothers and their sister-in-law.

At the outset the appellees insist that the decree should be affirmed for the reason that the appellant has accepted certain benefits under it and is therefore not in a position to question it. The motion appears to be well founded, but the decree may also be affirmed on the merits. We prefer the latter course.

Upon the issues still in dispute the testimony at the trial was in such conflict that the predominant question was that of credibility. Many of the contradictions were between W. P. Dodds on the one hand and either John or James on the other. Where the sole issue is that of credibility as between interested parties, our practice is to abide by the chancellor's judgment in the matter. *Souter* v. *Witt,* 87 Ark. 593, 113 S.W. 800, 128 A.S.R. 40 (1908).

Moreover, the appellant, as the plaintiff in the trial court, had the burden of proof. In some respects his testimony is inherently lacking in persuasiveness. He described expenditures that were made within three or four years before the trial and that involved thousands and thousands of dollars. Yet, even with respect to such recent outlays of substantial sums he was unable in most instances to produce supporting proof, either in the form of corroborating testimony or in the form of checks, receipts, or other documentary evidence. Nor did he satisfactorily explain the source of the funds that

he claimed to have spent, other than saying that he had been "gypsy trading," which he described as the buying of farm equipment in Arkansas for the purpose of selling it in other states. Again, no records were submitted to substantiate his testimony.

In the light of what we have just said we do not find it necessary to discuss the appellant's specific claims in great detail. Four of the items are asserted capital expenditures. John asked to be awarded $10,000 for having built an annex to the house on the main farm. The chancellor disallowed this claim but permitted John to remove the annex. Instead, John sold the annex to the purchaser at the partition sale. He is not in a position to ask to be reimbursed a second time for the annex.

Upon John's claim for $8,000 for having had ditches dug on the place the chancellor allowed only $3,000. The testimony was in sharp conflict, with W. P. Dodds stating that the county dug the ditches without charge. The chancellor's conclusion was in the nature of a compromise, which we do not consider to be against the weight of the evidence.

A third claim was for the construction of a $5,000 barn, but according to W. P. that building was erected with the proceeds of a fire insurance policy upon another structure that had burned down. The fourth capital claim, that of $1,200 for repairs upon a tenant house, was reduced by the chancellor to $500 in harmony with W. P.'s testimony that the house was not worth even that much. The test is the enhancement in value to the land, not the amount of the outlay. *McDonald* v. *Rankin*, 92 Ark. 173, 122 S.W. 88 (1909).

In addition to his capital claims the appellant seeks to recover certain maintenance expenses. The largest is a demand for $3,600 as compensation for having managed the farm property for the three years immediately

preceding· the filing of the suit. John testified that after the death of Dodds, Sr., in 1939 it was agreed that John would receive $100 a month for managing the property. There is, however, no proof that John ever actually received any such payments at all during the period in excess of 25 years that intervened between the asserted agreement and the institution of the suit. Even if such an agreement was made it was quite evidently abandoned long ago. There is also a small claim for repayment of fire insurance premiums, but the proof shows that part of the coverage was upon the annex which was awarded to John himself and that the policies were payable only to John and James, who pretty well made common cause against their co-tenants at the trial. We cannot say that the chancellor's allowance of $370 was an inadequate reimbursement for the premiums.

On the record as a whole we are not convinced that the chancellor's total allowances of $6,336 to John Dodds are so clearly against the preponderance of the proof as to call for revision in this court. To the contrary, we are persuaded that substantial justice was accomplished by the decree.

Affirmed.