Julia Griggs SWINSON *v.* Denny JARRATT and Phillip HICKY II

78-195                                                                 278 S.W. 2d 197

Opinion delivered March 5, 1979
(In Banc)
[Rehearing denied April 9, 1979.]

*Bill W. Bristow,* of: *Seay & Bristow,* for appellant.

*Butler, Hicky & Hicky,* by: *Preston G. Hicky,* for appellees.

DARRELL HICKMAN, Justice. This is an appeal from a decision in a partition suit before the St. Francis County Chancery Court. The court, finding that the appellees had an undivided one-fourth interest in some 380 acres, appointed commissioners and ordered a sale; the property was sold to Capital Growth Corporation for $180,000.00. The appellant, a ninety year old woman whose family had owned the land for several generations, appeals alleging five errors. We find no merit in three of those allegations which relate to the partition decree and order of sale because no appeal was taken from such decree and order.

The other two allegations of error contain merit requiring us to reverse a portion of the order of confirmation and remand the case for another hearing. One of the allegations of error is that a commissioner and a guardian ad litem serving in the case were interested parties in the purchase of the land and, therefore, the sale was void under Ark. Stat. Ann. § 34-1830 (Repl. 1962). The other allegation of error is that the court improperly awarded one of the appellees an attorney's fee for representing himself.

The appellees, Denny Jarratt, a banker, and Phillip

Hicky II, a lawyer, bought a one-fourth interest in this land from several heirs. They knew their title would be questionable but decided the endeavor was worth an investment of some $20,000.00. They made the purchase in October of 1976, with each buying an undivided one-eighth interest. Two months later they filed a partition suit which was resisted by the appellant. After the parties had filed several pleadings, the appellees, on July 11, 1977, filed a request for 128 admissions. The request was not answered nor was an extension of time requested by the appellant's lawyer within ten days. On August 1, 1977, a petition was filed by the appellant's attorney to withdraw citing that he had a failure of communication with the appellant. This was granted after a hearing on the 18th day of August. On August 25, a new attorney for the appellant filed a request for an extension of time in which to answer the request for admissions. (Later, proposed answers to the request for admissions were offered.) The court, after a hearing, denied the motion because no extension was obtained prior to the expiration of time in which to answer.

The testimony taken at the hearing on the motion indicated that the appellant did not receive the request for admissions within the time allowed for answers. According to the appellant's former attorney the request which was mailed to her was returned; sometime later, the request was remailed. No reason was given by the attorney for not obtaining an extension of time.

The court granted the appellees an undivided one-fourth interest in the property on the basis of the pleadings and the unanswered request for admissions. In other words, essentially there was a default on the question of appellees' title.

Three commissioners, appointed by the court, filed a brief statement asserting that the land could not, without prejudice, be partitioned and recommended a sale.

At the court-ordered sale, the land was purchased by Capital Growth Corporation for $180,000.00. After the sale, but before confirmation, Troy Glaspar, Jr., a relative of the appellant, filed a petition to intervene in the matter stating

that he had a power of attorney from the appellant. He objected to the granting of the partition decree and the procedure used by the commissioners. He also pointed out that one of the commissioners had a conflict of interest because he worked for the buyer. He asked for a reconsideration of the matter.

The court entered an order confirming the sale, and, apparently in reference to the numerous allegations of irregularities raised in the petition of Troy Glaspar, Jr., found that there were no procedural defects. However, the court did not address the problem of conflict of interest.

On appeal, the appellant argues that the sale and confirmation are void because of a violation of Ark. Stat. Ann. § 34-1830 (Repl. 1962), which provides:

> No commissioner, nor any person for his benefit, shall purchase or be directly or indirectly interested in the purchase of any of the premises sold, nor shall any guardian of any minor or person of unsound mind, party to the proceedings, purchase or be interested in the purchase of any of the lands, the subject of the proceedings, except for the benefit or in behalf of his wards; and all sales contrary to the provisions of this section shall be void.

The appellant argues that there is evidence that Edward Harris, one of the three commissioners, was an original incorporator and stockholder of Capital Growth Corporation. The appellees virtually concede that there may have been such a conflict of interest and that the sale may be void because Edward Harris is an incorporator and stockholder in Capital Growth Corporation.

Certainly, if that is the case, the sale ought to be set aside and a new sale ordered. A commissioner is a trustee and it is his duty and obligation not only to avoid, in every way, participating in the purchase of property, the sale of which is under his supervision, but also to report to the court any possible conflict of interest. Harris owed this duty to the parties and the court.

The trial judge had before him an allegation that should have been addressed and answered and we remand the case for a hearing on this issue. If it is determined that Edward Harris has an interest in the corporation, of course the sale should be set aside. A new sale may be ordered if the appellant tenders into the court the consideration she had already received from the first sale. We do not go back beyond the sale because those issues were not properly preserved for appeal.

The other allegation of error we address is regarding an attorney's fee awarded to Philip Hicky, II. He asked for $9,-000.00 and the court awarded him a $4,500.00 fee. There was a hearing and it was Hicky's testimony that essentially his law firm represented him in the matter, and although he had done much of the work, the firm would have to be paid for the services. The record indicates that all court appearances were by Phillip Hicky, II. He concedes he did a lot of preliminary work that might not be strictly characterized as "legal." We do not feel that Arkansas law permits an attorney to receive an attorney's fee when he is also a petitioner in a partition suit.

Ark. Stat. Ann. § 34-1825 (Supp. 1977), which permits an attorney to obtain a fee in a partition suit, provides:

> Hereafter in all suits in any of the courts of this State for partition of lands when a judgment is rendered for partition in kind, or a sale and a partition of the proceeds, the court rendering such judgment or decree shall allow a reasonable fee to the attorney bringing such suit, which attorney's fee shall be taxed as part of the costs in said cause, and shall be paid pro rata as the other costs are paid according to the respective interests of the parties to said suit in said lands so partitioned.

We have held that an award of attorney's fees under that statute is unconstitutional. *Cole v. Scott,* 264 Ark. 800, 575 S.W. 2d 149 (1979). However, under circumstances where a lawyer is entitled to an attorney's fee because he files a petition and partition is granted, the fee should be set carefully by the court after deliberation and then only for an amount

that is fair and justified. While we have approved fees for as much as 5% of the sale price, we recently limited the fee to about 3% of the sale price. *Fortuna* v. *Achor,* 254 Ark. 1035, 497 S.W. 2d 251 (1973); *Cole* v. *Scott, supra.*

We adopt the view in regard to attorney's fees for parties who represent themselves that they are improper. Compare *Muller* v. *Martin,* 116 Cal. App. 2d 431, 253 P. 2d 686 (1953).

We do not mean to imply that the trial court or the appellees acted improperly in any way. We have never had these questions before us heretofore. However, this action was resisted by the appellant from the beginning and the appellees as much as conceded that they bought the property with the intention of having it partitioned and making a profit. The evidence indicates that their profit has been at least $10,000.00; they have doubled their money. Aside from the legal issues raised, it would, in our judgment, be unfair to penalize the appellant by adding to the costs of the proceeding an attorney's fee, when, in fact, one of the petitioners was simply representing himself.

Therefore, the case is remanded for a hearing to determine whether the sale is void under Ark. Stat. Ann. § 34-1830 (Repl. 1962). We reverse the trial court's decision on the matter of the attorney's fee and affirm the judgment in all other respects.

Affirmed in part.

Reversed and remanded in part.

FOGLEMAN and HOLT, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I would affirm the decree of confirmation.

In the first place the majority has ignored the rule, heretofore uniformly applied, that one who accepts the benefits of a decree or judgment cannot question its validity on appeal and cannot escape its burdens. *DeLaughter* v. *Britt,* 243 Ark. 40, 418 S.W. 2d 638; *Mason* v. *Urban Renewal of North*

*Little Rock*, 245 Ark. 837, 434 S.W. 2d 614; *Baker* v. *Adams*, 198 Ark. 482, 129 S.W. 2d 597; *Stanley* v. *Dishough*, 50 Ark. 201, 6 S.W. 896. See also, *Anderson* v. *Anderson*, 223 Ark. 571, 267 S.W. 2d 316. This rule applies where sales for partition are the subject of the decree. *Dodds* v. *Dodds*, 246 Ark. 313, 438 S.W. 2d 54. It cannot be said that acceptance of the proceeds of the sale is independent of appellant's challenge of the validity of the sale. Nor can it be said that the amount withdrawn by appellant would be hers in any event. Certainly her acceptance of her portion of the proceeds of the sale is inconsistent with her appeal. Apparently the majority has carved out a new exception to the general rule without defining it or without specifying whether it applies to this case only. Obviously, a requirement that the benefits accepted be restored could have been utilized in nearly every case in which the rule has been applied, as a means of avoiding its impact. The principle followed in all cases is well stated in *Bolen* v. *Cumby*, 53 Ark. 514, 14 S.W. 926, viz:

> *** Again, a party may prosecute his appeal from a judgment, partly in his favor and partly against him, even after accepting the benefit awarded by the judgment, provided the record discloses that what he recovers is his in any event — that is, whether the judgment be reversed or affirmed. But he waives his right to an appeal by accepting a benefit which is inconsistent with the claim of right he seeks to establish by the appeal. "A party cannot ratify and yet repudiate the same transaction in one breath. He must make his election at the outset to repudiate it *in toto* or take it *cum onere,* and, when once made and acted upon, he is estopped from assuming an attitude inconsistent with his first position and detrimental to the rights of others." *Dismukes* v. *Halpern,* 47 Ark. 320.

The evidence appellant has injected into the record on appeal was not presented to the chancery court, as appellant's attorney says that it was not discovered until after the transcript had been lodged here. It is quite novel for this court to reverse the trial court on evidence that was not before that court. See *Harvey* v. *Castleberry*, 258 Ark. 722, 529 S.W. 2d 324; *Becker* v. *Rogers*, 235 Ark. 603, 361 S.W. 2d 262. For the

first time, this court is reversing the trial court on matters not before the trial court and not properly in the record at all. See *Winfrey* v. *People's Savings Bank,* 176 Ark. 941, 5 S.W. 2d 360; *Gill* v. *Burks,* 207 Ark. 329, 180 S.W. 2d 578; *Jernigan* v. *Pfeifer Bros.,* 177 Ark. 145, 5 S.W. 2d 941.

Newly discovered evidence is not a basis for reversal on appeal. *Osborne* v. *State,* 96 Ark. 400, 132 S.W. 210. It is only a ground for a bill of review in the trial court. *Richardson* v. *Sallee,* 207 Ark. 915, 183 S.W. 2d 508; *Robertson* v. *Chronister,* 199 Ark. 373, 134 S.W. 2d 517, cert. den. 309 U.S. 658, 60 S. Ct. 516, 84 L. Ed. 1007 (1940). Newly discovered evidence presented for the first time to this court dehors the record simply cannot be the basis for a reversal of a decree.

Furthermore, I cannot agree that the award of attorney's fees was erroneous. There is no valid reason for adopting the view that an attorney who represents his own interest is not entitled to have attorney's fees allowed under our statute. In my opinion, it is absurd to say that a lawyer in such a situation must either employ another attorney (in this case outside his own firm) or render his services in a partition suit to all interested parties without compensation.

The statute applies to "all suits" without exception. Its application is mandatory. *Johnston* v. *Smith,* 248 Ark. 929, 454 S.W. 2d 649. The fee is allowed to the "attorney bringing such suit." It is to be paid "pro rata as the other costs are paid." The preamble to the act now in effect premised Act 518 of 1963, which amended the previous act on these premises:

> "Whereas, the attorney for the petitioners in partition suits prepares the papers, including decrees, distribution, and deeds, etc., in the partition proceedings, and

> "Whereas, pretended defenses have been set up by which the courts have not set fees against all interested parties, and

> "Whereas, many tracts in this state are not being utilized due to the fact that the movant may have to pay

the fees while those who are stifling the property will go free of costs; . . . "

Prior to the act of 1963, the act which provided for attorney's fees was not applicable to an adversary proceeding. *Hendrickson* v. *Duncan,* 236 Ark. 722, 370 S.W. 2d 131.

We pointed out the justification for a mandatory allowance in *Johnston* v. *Smith,* supra, saying:

Justification for these statutes has been found in the importance of painstaking preparation before filing of the suit and the necessity for meticulous compliance with procedural requirements thereafter in order to assure that all parties in interest are before the court and that there are no unnecessary impediments to a proper conclusion of the proceeding. These measures obviously inure to the benefit of those owning any share of the property. To require the cotenant who institutes the action to bear more than his proportionate share of this burden is inequitable. The preamble to Act 518 of 1963 clearly indicates our General Assembly's awareness of the inequitable burden risked by one initiating a partition suit and its intention to remedy the situation by amendment of the existing law. Dissatisfaction with the discretionary latitude of the trial courts in allowance of these expenses was expressed in the emergency clause. If there remains, after reading the text of the act, the slightest doubt of the legislative intention to make allowance of attorney's fees in a partition suit mandatory, it is quickly dissipated by reading the introduction and conclusion of this legislative record.

The fact that the services are rendered by one having an interest in the land should not make a whit of difference. To deny compensation on this basis is grossly inequitable. This fee is allowed as costs incident to the action and should be assessed and taxed proportionately against all parties. See *McElhaney* v. *Cox,* 257 Ark. 934, 521 S.W. 2d 66; *Crouch* v. *Crouch,* 251 Ark. 1047, 476 S.W. 2d 248. To hold that the other litigants are entitled to the benefit of an attorney's services just because he happens to be one of the plaintiffs is a

windfall, which could be characterized as a "free ride," if not unjust enrichment.

More should be said, however, as sustaining the chancellor's actions in this matter, in justice to all the parties. In his letter opinion, the chancellor stated that, in arriving at the amount of the award for attorney's fees, he had taken into consideration the fact that Philip Hicky was one of the owners of the land being partitioned, and that he had acted partially in his own behalf in some of the actions. The chancellor found that the fact that Hicky was one of the owners should not deprive him of a reasonable fee,, but that he was not entitled to as large a fee as he otherwise would be. The fee was awarded to Hicky's firm — Butler, Hicky & Jones.

Hicky had requested a fee of $9,000. Mr. Preston Hicky was the attorney of record. Phil Hicky testified that there was a serious question in his mind as to who should be made parties and that he spent considerable time researching deed records and marriage records to ascertain the identity of the proper parties and spent numerous hours discussing the title with various people. He went to the property and made an investigation as to the location of the boundaries. Either he or Preston Hicky prepared the orders entered in the case. Phil Hicky did the major part of the work. A work sheet of the firm showed 88 hours devoted to the case, of which 58.3 were documented and 30 hours estimated. Twenty to twenty-five hours were spent investigating family backgrounds and identifying heirs. Phil Hicky estimated that the total time he devoted to all matters pertaining to the land totalled 150 hours. Phil Hicky testified that he spent the firm's time in the matter and was "going to have to pay for this time through our firm." In *Muller* v. *Martin,* 116 Cal. App. 2d 431, 253 P. 2d 686 (1953), the statute was quite different from ours. It provided for allowance of reasonable counsel fees *expended* by the plaintiff for the common benefit of the parties. The basis for this construction of the statute was that it provided for reimbursement of the parties for fees paid or incurred. To reach this result in this case requires a misreading of our statute. In Oklahoma, the statute is more like our own. The Supreme Court of Oklahoma has held that an attorney who represents himself in a partition action is entitled to compen-

sation, but has adopted the following safeguards, in *Weaver* v. *Laub*, 574 P. 2d 609 (Okla., 1977):

> In order to allow attorneys to collect and be awarded fees for representing themselves, and at the same time minimize the dangers inherent in such a practice, we adopt the following safeguards. Before attorneys can be awarded fees for representing themselves, they must prove the following, through clear and convincing evidence:
>
> > 1.  Attorneys must show that all actions taken by them, for which they seek a fee, were performed in good faith.
> >
> > 2.  Attorneys must prove that all work performed, for which they seek a fee, was necessary work. In proving necessity, attorneys must present a written itemization of all services performed which must include an indication of the time spent to perform each service and an explanation, of why each itemized service was necessary. The itemization presented for the court's scrutiny must be specific and attested to under oath.
> >
> > 3.  Attorneys must prove the reasonableness of the fees they seek.
> >
> > 4.  In the case of a partition action, attorneys must show that all work for which they seek fees was beneficial to others in the litigation, and not merely beneficial to their own interests.
>
> By placing the above burden upon attorneys seeking fees for representing themselves, we allow attorneys who have acted in good faith and performed necessary services to be compensated for their work, and at the same time establish safeguards to protect the general public against possible abuses.

I submit that the action of the chancellor followed the proper guidelines in the matter.

I am authorized to state that Mr. Justice Holt joins in this opinion.