**In re Dale S. JONES, Debtor.**

**Bankruptcy No. 90–02198–BKC–6C7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 16, 1992.

T. Kevin Knight, Drage, DeBeaubien, Knight & Simmons, Orlando, Fla., for debtor.

James C. Orr, Titusville, Fla., trustee.

Leigh R. Meininger, Meininger & Meininger, Orlando, Fla., for trustee.

David A. Sims, Altamonte Springs, Fla., for DSJ Realty, Inc.

ORDER ON AMENDED APPLICATION OF DSJ REALTY, INC., FOR NUNC PRO TUNC APPROVAL TO RETAIN PROFESSIONAL AND FOR COMPENSATION AS REAL ESTATE BROKER

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This case came on for hearing on November 14, 1991, of the amended application for nunc pro tunc approval to retain professional and for compensation as a real estate broker filed by DSJ Realty, Inc., on October 10, 1991 (Document No. 496).

*Undisputed Facts and Procedural History*

In 1980, the debtor and three other individuals entered into the Springdale Joint Venture Agreement ("the Springdale partnership"), a general partnership. The debtor owned a 75 percent interest in the Springdale partnership. The debtor's son, Dale S. Jones, Jr., owned a five percent interest. At the same time, the partners of the Springdale partnership entered into the Springdale Land Trust Agreement ("the Land Trust"). The purpose of the Land Trust was to hold legal title to the real property of the Springdale partnership. The debtor was the trustee for the Land Trust and held title to a parcel of real property in Seminole County, Florida ("the Springdale parcel"), as "Dale S. Jones, trustee, pursuant to the terms of the Springdale Land Trust Agreement and the Springdale Joint Venture Agreement."

About ten years later, the debtor filed a petition under Chapter 11 of the Bankruptcy Code initiating this case (Document No. 1). The debtor captioned the petition in his individual name and as the trustee of 18 separate land trusts. This court struck from the petition and the caption of the case the "individually and as trustee" language because it deceptively implied that the land trusts were themselves Chapter 11 debtors, in violation of Section 302 of the Bankruptcy Code (Document No. 32).

The debtor and the other partners in the Springdale partnership later wanted to sell the Springdale parcel and distribute the proceeds to the partners in accordance with their interests in the Springdale partnership. The debtor filed a report and notice of sale of estate assets (Document No. 356). The court treated the report and notice as a motion to approve a sale out of the ordinary course of business pursuant to Section 363(b)(1) of the Bankruptcy Code. The report and notice also provided for the payment out of the sale proceeds of a real estate commission of $30,400 to a real estate brokerage firm, DSJ Realty, Inc. ("DSJ"). This brokerage firm is controlled by and affiliated with the debtor. Ninety-three percent of DSJ is owned by DSJ Enterprises, Inc. ("Enterprises"), and the debtor owns 100 percent of Enterprises. Also, because of Florida law, DSJ must act through a licensed real estate broker. The licensed broker for DSJ was Dale S. Jones, Jr., the debtor's son, who himself owns a five percent interest in the Springdale partnership.

After a hearing, this court approved the sale of the Springdale parcel and the debtor's interest in the Springdale partnership, but required the real estate commission to be escrowed pending further order (Document No. 398). After a separate evidentiary hearing on the entitlement to broker's fees, this court entered its order holding that the provisions of Sections 327 and 330 of the Bankruptcy Code applied to the brokerage firm and the sale, that the debtor had employed DSJ, and that neither the debtor nor DSJ had made application to the court for approval of the broker's employment by the debtor (Document No. 412). Because the court had not approved the employment of DSJ under Section 327 of the Bankruptcy Code, the court further held that it could not approve the payment of the commission to the brokerage firm under Section 330 of the Bankruptcy Code. The court's ruling was specifically made without prejudice to the right of DSJ to seek nunc pro tunc approval of its employment and payment (Document No. 412). DSJ, however, filed a notice of appeal from this order (Document No. 422) and contemporaneously contended that the order was a final order for purposes of appeal (Document No. 423).

During the pendency of the appeal, DSJ applied for nunc pro tunc approval of its employment and compensation (Document No. 445B). DSJ accompanied the application with affidavits in an apparent attempt to comply with the provisions of F.R.B.P. 2014(a) and 2016 (Document Nos. 445C, D, and E). After a hearing, the court denied without prejudice this application because the pending appeal to the district court had divested this court of jurisdiction of the matter (Document No. 493). DSJ later voluntarily dismissed the appeal (Document No. 488).

In the meantime, the court converted this case to a case under Chapter 7 of the Bankruptcy Code, and a trustee was duly appointed (Document No. 455). Later, DSJ filed its pending amended application for nunc pro tunc approval (Document No. 496). At the hearing on the application, the Chapter 7 trustee objected to nunc pro tunc approval of DSJ as the real estate broker for the debtor.

## Discussion

■■■ The filing of a Chapter 11 petition creates an estate comprised of all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a). It is well settled that the bankruptcy estate includes the legal title to real property even if that is the debtor's only interest in the property. 11 U.S.C. § 541(d); *Missouri v. U.S. Bankruptcy Court for the E.D. Of Arkansas*, 647 F.2d 768, 774 (8th Cir.1981); 4 L. King, *Collier on Bankruptcy* ¶ 541.01 at 541–6 (15th ed. 1991). Thus, it is clear that the debtor's bare legal title to the Springdale parcel became property of the estate, as did the debtor's 75 percent interest in the Springdale partnership, the beneficial owner of the Springdale parcel.

■■■ This court has already decided that, because the legal title to the parcel became part of the estate, Section 327 of the Bankruptcy Code required the debtor to obtain court approval of the employment of any real estate broker for the parcel. *See* Document No. 412. This conclusion is inescapable. As the report and notice of sale shows, the debtor proposed to sell the Springdale parcel and distribute the proceeds to the partners in accordance with their interests in the Springdale partnership. The debtor owned bare legal title to the parcel and a 75 percent interest in the Springdale partnership (Document No. 356). This sale plainly constituted a sale of property of the estate under Section 363 of the Bankruptcy Code. Thus, the debtor-in-possession as trustee pursuant to Section 1107 of the Code was required to obtain court approval of any professionals employed in connection with this sale, as such persons would be assisting him in carrying out his duties under the Bankruptcy Code. 11 U.S.C. §§ 327(a), 1107(a).

■■■ DSJ has previously taken the position that the court's determination on this point is contained in a final appealable order entered on May 1, 1991 (Document No. 412). DSJ has also abandoned the appeal of that order. The order is therefore final for all purposes. Although DSJ is now barred under res judicata principles from relitigating the issues resolved by this court in that order, DSJ nevertheless argues that the requirement that the debtor comply with Section 327 is inconsistent with an earlier ruling in this case, *In re Dale S. Jones*, 121 B.R. 122 (Bankr. M.D.Fla.1990) (*"Fidelity"*). In *Fidelity*, this court held that, because bare legal title to real estate is property of the estate, the automatic stay imposed by Section 362 of the Bankruptcy Code applied. *Id.* at 124. Upon an appropriate motion under Section 362(d) of the Bankruptcy Code, however, this court modified the stay to allow a creditor to foreclose the real property because, on the facts of that contested matter, the estate derived no benefit from that bare legal title to the property. *Id.* at 125.

This court's position in this matter is entirely consistent with that in *Fidelity*. Bare legal title is property of the estate, and the procedural mechanisms of the Bankruptcy Code—be they the automatic stay or the prohibition on unauthorized employment of professionals—all apply regardless of the value to the debtor's estate.

■■■ Turning to the issues this court has not addressed in previous orders, the application for nunc pro tunc approval of DSJ's employment and compensation cannot now be granted.[1] The applicable law on this

---

1. Under Section 327(a) of the Bankruptcy Code and F.R.B.P. 2014, only the trustee can employ professionals. Here, the professional seeks to be employed based on its own application. Despite the general proscription on this practice, however, it has been allowed by at least one other judge in this district. See *In re Lindo's Tours, USA, Inc.*, 55 B.R. 475 (Bankr.M.D.Fla. 1985) (Paskay, C.J.). In view of. the court's decision on the merits, the court does not decide

point has recently been stated in *In re Smith,* 125 B.R. 841 (Bankr.M.D.Fla.1991), and *In re Bicoastal Corp.,* 118 B.R. 855 (Bankr.M.D.Fla.1990).

■ First, nunc pro tunc approval of an application of a professional can be granted only if the failure to file a timely application was due to excusable neglect. *In re Smith, supra* at 842. Here, DSJ has come forward with no evidence whatsoever of excusable neglect for failing to seek approval at the time the brokerage firm was first engaged. The debtor certainly knew that the property of the estate included the legal title to the Springdale parcel and the 75 percent interest in the Springdale partnership—that was the significance of the order striking the surplus language from the petition and caption (Document No. 32) as fully discussed in open court at the time. DSJ and the debtor are sufficiently intertwined so that the debtor's knowledge is properly imputed to DSJ. *See Donovan v. Schmoutey,* 592 F.Supp. 1361, 1399 (D.Nev.1984); *Cross Properties, Inc. v. Brook Realty Co.,* 37 A.D.2d 193, 322 N.Y.S.2d 773, 781 (N.Y.Sup.Ct.1971).

In addition, the debtor in fact sought the court's approval of the sale of the property, as it was required to do, and DSJ obviously knew that the sale was therefore subject to court approval. Representatives of DSJ were in attendance at the time the court heard the motion for approval of the sale.

■ Second, nunc pro tunc approval requires a showing that the applicant would have been approved initially if a timely application had been filed. At a minimum, this means that the disinterestedness requirement of Section 327(a) of the

Bankruptcy Code must be met. *In re Smith, supra* at 842. The brokerage firm sought to be employed here, DSJ, plainly fails that test because it is *not* a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code.[2] DSJ is almost wholly owned by Enterprises, which is wholly owned by the debtor. The broker of record, the debtor's son, also owns an interest in the Springdale partnership. These related companies are too intertwined with the debtor to be disinterested persons under Section 327 of the Bankruptcy Code. Thus, this court could not and would not have authorized DSJ's employment as a professional had the application been presented at the time it should have been, that is, at or before the employment and before the sale.

■ DSJ makes much of the fact that some of the individuals with whom it promised to share its commission are disinterested persons. The thrust of this argument is that it is somehow unfair to deny these individuals their commissions after they have done the work and found a buyer for the parcel. But it is DSJ—not the individuals—that is the brokerage firm seeking employment and compensation. Moreover, this court could not have approved the employment of those individuals even if they had applied. Certainly Dale S. Jones, Jr., the debtor's son, could not have been employed because he is not disinterested. 11 U.S.C. §§ 101(14), 101(31)(A)(i), 101(45). Likewise, the other individuals could not have been employed in their own right because their affidavits do not reflect that they are licensed real estate brokers or salesmen.[3] § 475.42(1)(a), Fla.Stat.1989.

the question of whether a professional, as distinguished from the trustee, may properly file an application of this kind.

**2.** Section 327(a) contains the disinterestedness requirement. See also F.R.B.P. 2014(a). A "disinterested person" is defined by Section 101(14) of the Bankruptcy Code as a person that "is not ... an insider." An "insider" is defined by Section 101(31)(E) of the Bankruptcy Code as an "affiliate, or insider of an affiliate as if such affiliate were the debtor." Finally, an "affiliate" is defined by Section 101(2)(B) as a "corporation 20 percent or more of whose outstanding

voting securities are ... owned ... by the debtor...."

Enterprises is an affiliate of the debtor. 11 U.S.C. § 101(2)(B). DSJ is an insider of Enterprises because it is an affiliate of the latter. 11 U.S.C. § 101(31)(E). Thus, DSJ is an insider of the debtor and not a disinterested person. 11 U.S.C. § 101(14).

**3.** Even if the individuals were licensed salesmen, a salesman cannot operate as a real estate broker. §§ 475.42(1)(b), 475.01(1)(c) and (d), 475.01(3), Fla.Stat.1989. Likewise, a licensed salesman can collect a commission only in the

The fact that DSJ may have failed in its responsibilities to these individuals is not reason for this court to ignore the plain requirements of the Code.

The requirements that the court enforces here are not merely technical rules that have no great significance beyond themselves. Instead, these are rules that are placed in the Code to protect all creditors from abuse and self-dealing by a debtor-in-possession. Indeed, the abuse and self-dealing the Code seeks to prevent occurred in this very case. In essence, the debtor is asking this court to approve a payment to his own brokerage firm—thereby to himself—of a ten percent broker's commission on the sale of estate property, thus diverting funds from creditors to himself outside the distribution scheme of the Code. Allowing the debtor to pay his own brokerage firm this commission reduces the proceeds to the estate available for the benefit of creditors. Stated in these terms, it is quite easy to see why the Bankruptcy Code does not permit this court to countenance this self-dealing.

The wrinkle presented by the facts of this case is that only 75 percent of the proceeds of the sale of the Springdale parcel are to flow into the bankruptcy estate because the debtor's interest in the Springdale partnership is only 75 percent. Because 25 percent of the proceeds of the sale were distributed to non-debtor third parties in accordance with their beneficial ownership in the Springdale partnership, the concerns stated here about diverting funds from the estate as a result of the debtor's self-dealing are inapplicable to this 25 percent of the ten percent broker's commission. The court should therefore leave unaffected this 25 percent of the commission. In other words, to give full effect to the provisions of the Bankruptcy Code and the principles described here, the court should disallow only that portion of the commission that would be diverted from creditors if allowed. Thus, this court will allow DSJ to receive 25 percent of the escrowed commission because that portion was not available to the estate and therefore is not being diverted from creditors. The remaining 75 percent of the escrowed commission shall be turned over to the Chapter 7 trustee for distribution to creditors.

This result recognizes the extent of the estate's interest in the proceeds of the sale and prevents a windfall to the estate. *See In re Martin,* 102 B.R. 653, 657 (Bankr. W.D.Tenn.1989). It also recognizes the effect of performing services without court authorization. 2 L. King, *Collier on Bankruptcy* ¶ 327.02 at 327–9 (15th ed. 1991) (a person who performs without court authority "may be an officious intermeddler or a gratuitous volunteer").

### Conclusion

The application of DSJ for nunc pro tunc approval of its employment and compensation as a real estate broker for the debtor is denied. Nevertheless, the court directs that 25 percent of the funds held in escrow shall be distributed to DSJ on account of the commission, and the remaining 75 percent shall be turned over to the Chapter 7 trustee.

DONE and ORDERED.

---

name of the employer, a licensed broker. See §§ 475.42(1)(d) and 475.01(2), Fla.Stat.1989.