**In re Burma Jean MARTIN.**

**Bankruptcy No. 95–42745 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Jan. 29, 1997.

Michael Knollmeyer, for Parents.

Richard Cox, Trustee, Hot Springs, AR.

James F. Dowden, Little Rock, AR, for Trustee.

Keith Grayson, N. Little Rock, AR, for Debtor.

### ORDER DENYING MOTION FOR ABANDONMENT

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Motion for Abandonment filed on April 26, 1996, by the parents of the debtor, John Paul and Hazel Victoria Martin, to which the trustee responded on June 5, 1996. The debtor's parents ("the parents") request that the Court order that two particular parcels of real property be abandoned from the bankruptcy estate.[1] The parents assert that nei-

---

1. The property descriptions are as follows:
    Lot 18, Block 1, Overbrook Addition to the City of N.L.R., Pulaski County Arkansas, and;

Kingsbridge Townhomes Apartment No. 11, Horizontal Property Regime No. 1, Pulaski County, Arkansas.

ther the debtor nor the estate has any interest in the property such that they should be abandoned. Trial of the matter was held on October 23, 1996, at which the Court heard the testimony of Hazel Victoria Martin and the debtor, Burma Jean Martin.

Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Property of the estate is also limited to interests of the debtor:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

■ While federal bankruptcy law determines the effect of legal or equitable interests in property, *N.S. Garrott & Sons v. Union Planters National Bank (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir.1985), the Court looks to state law to determine the nature and extent of the interest, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re N.S. Garrott & Sons*, 772 F.2d at 466. Accordingly, Arkansas law determines the nature and extent of the debtor's interest in the subject real estate. Under federal bankruptcy law, the estate succeeds only to the title and rights in property the debtor had at the time of the filing of the petition in bankruptcy. *In re N.S. Garrott & Sons*, 772 F.2d at 467.

■ The debtor's name appears on the deeds to the properties such that she clearly has a legal interest in the properties. When the parents conveyed an interest to the debtor by deed, she became a legal owner of the property under Arkansas law. *See Dawkins v. Petteys*, 181 S.W. 901, 121 Ark. 498 (1915);

*see also Lael v. Crook*, 97 S.W.2d 436, 192 Ark. 1115 (1936). The fact that the parents purportedly only intended to do this for "estate planning" purposes does not alter the legal effect of the deed.[2] Hazel Martin testified that she did not really intend for her daughter to acquire an interest in the property, but, rather, she wanted to ensure that the debtor had a place to live should the parents die. This is insufficient proof to invalidate the deed or the estate's interest in the property. The parents do not assert that there was any fraud, undue influence, or that they did not otherwise have the mental capacity to convey their property. Mere weakness of mind is insufficient to invalidate the conveyance. *See Oxford v. Hopson*, 83 S.W. 942, 73 Ark. 170 (1904). At the time the relevant transactions were conducted, Hazel Martin[3] had the mental capacity to understand the extent and condition of the property, how she was disposing of it, to whom, and upon what consideration. *Cf. Taylor v. United States*, 113 F.Supp. 143 (W.D.Ark.1953), *aff'd* 211 F.2d 794 (8th Cir.1954).

Moreover, there is no suggestion that any of the deeds were signed by mistake. Where parties to a deed sign it of their own volition, they will not be heard to say that they did not know what it contained or that they did not understand the plain and ordinary meaning of the words used. *Hearin v. Union Sawmill Co.*, 151 S.W. 1007, 105 Ark. 455 (1912). Accordingly, upon delivery of the deed, Burma Jean Martin, the debtor, acquired a legal interest in the property. Upon the filing of this bankruptcy case, the estate succeeded to that interest. 11 U.S.C. § 541(a); *see In re Jones*, 138 B.R. 289 (Bankr.M.D.Fla.1992) (bankruptcy estate includes legal title to real property).

■ Although the parents assert that they made all of the payments on mortgages and

---

2. There were at least five deeds regarding the Kingsbridge property. The third deed was apparently signed in blank whereupon the debtor conveyed the title to her minor daughter. While this deed may have been invalid, the transaction was subsequently rectified by a conveyance back to the parents. Later, the parents conveyed the Kingsbridge property to themselves, their debtor daughter, and granddaughter. The Court does not believe that this latter transaction was merely a "mix-up."

3. No proof was offered regarding John Paul Martin's intent or capacity.

paid for all improvements on the properties,[4] this does not divest the debtor of all equitable interest in the property. *Cf. Hawkins v. Scanlon,* 206 S.W.2d 179, 212 Ark. 180 (1947) (one-quarter owner entitled to full one-quarter of proceeds despite fact that other tenant made payments and improvements). While it is true that these factors may, in a chancery action to partition the property, entitle them to reimbursement, *see Beshear v. Ahrens,* 709 S.W.2d 60, 289 Ark. 57 (1986); *Dodds v. Dodds,* 438 S.W.2d 54, 246 Ark. 313 (1969), it does not follow that the debtor is divested of all equitable interest in the property. Moreover, the Court notes that the debtor is the named insured on the property.

The testimony offered by the parents was not only insufficient, it was not credible. Hazel Martin answered affirmatively to leading questions, but could not testify with any credibility when asked direct questions. Nor could she testify with any credibility without documents from which she could read her answer. On numerous occasions, Hazel Martin appeared to be questioning her attorney as to what her answer should be. On cross-examination, she could not directly answer any question. The talismanic answer that the conveyances were made to "avoid probate" is not truthful. *Cf. United States v. Parks,* 1991 WL 115775 *3, *6 (D.Utah Apr. 26, 1991) (rejecting "estate planning" assertions). Hazel Martin's assertion that the debtor had no interest in the property does not ring true when one considers that she permitted her daughter to obtain proceeds, hold blank deeds, fill out loan applications for the parents, and handle transactions on the property. This is particularly so in light of Hazel Martin's assertions of "50 years experience in real estate."[5]

The debtor's testimony is particularly incredible. The debtor originally filed schedules listing no real property. Those schedules were amended on June 27, 1996, at which time she asserted a one-quarter interest in each of the subject properties, and a *homestead exemption* in the Cedar creek property. At this trial, however, the debtor asserts that she has no ownership interest in either of the properties. While it is true that the debtor was required to list her legal interest in the properties, the claim of homestead exemption is fundamentally inconsistent with her testimony at trial. In any event, her testimony is entitled to no credibility.

Based upon the foregoing, the Court finds that the debtor has both equitable and legal interests in the subject properties such that it is

**ORDERED** that the Motion for Abandonment filed on April 26, 1996, by the parents of the debtor, John Paul and Hazel Victoria Martin is DENIED.

**IT IS SO ORDERED.**

---

4. The parents also assert that the fact that they took the mortgage interest deduction on their taxes in 1991 evidences their ownership of the property. Ironically, the parents, at an earlier hearing before this court, testified that they have not filed a federal income tax return for the last four years, purportedly because of disputes with the debtor regarding various properties.

5. Burma Jean Martin testified that she "managed" the properties for her parents. This also does not ring true in light of the fact that the granddaughter's name also appears on several documents, particularly deeds. Neither the debtor's nor the granddaughter's name need be on the deeds if the debtor is merely "managing" the property.